## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Lewis C. Brown | ) ) ) | 301cv1967(RNC) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Experian Information Solutions, Inc. | ) ) | |
| Defendant. | ) ) ) | December 22, 2003 |

### JOINT TRIAL MEMORANDUM

Defendant Experian Information Solutions ("Experian") and Lewis C. Brown ("Lewis"),

submit this Joint Trial Memorandum pursuant to the Court's Order dated December 1, 2003.

I.    **TRIAL COUNSEL**

    A.    <u>FOR PLAINTIFF</u>

        (1)    Zenas Zelotes, Esq.

            (a)    Address:    Consumer Law Office of Z Zelotes
                              5 Shaw's Cove, Suite 202
                              New London CT 06320    (Effective 1/1/04)

                              Consumer Law Office of Z. Zelotes
                              753 Buddington Road
                              Groton, CT  06340    (Ends: 12/31/03)

            (b)    Telephone:    (860) 448-6140

    B.    <u>FOR DEFENDANT</u>

        (1)    Daniel J. McLoon, Esq.  (Pro Hac Vice Admission, Pending)

            (a)    Address:    Jones Day
                                555 West Fifth Street
                                Los Angeles, California 90013

(b)     Telephone:     (213) 489-3939

(2)     George Kostolampros, Esq.

      (a)     JONES DAY
           222 East 41st Street
           New York, New York 10017

      (b)     Telephone     (212) 326-8375

## II.    JURISDICTION

### A.    SUBJECT MATTER JURISDICTION

28 U.S.C. §§ 1331. 1337 and 1367. 15 U.S.C. § 1681p, and Fed. R. Civ. P. 18(a).

### B.    PERSONAL JURISDICTION

28 U.S.C. § 1391 and 15 U.S.C. § 1681p.

## III.   JURY/NON-JURY

Jury.

## IV.    NATURE OF CASE

### A.    FEDERAL FAIR CREDIT REPORTING ACT

(1)     Causes of Action

      (a)     Willful and/or negligent failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about who a report relates. 15 U.S.C. § 1681e(b).

      (b)     Willful and/or negligent failure to furnish all of the information in the Plaintiff's file to the Plaintiff upon proper request. 15 U.S.C. § 1681g(a)(1).

### B.    CONNECTICUT FAIR CREDIT REPORTING ACT AND CONNECTICUT UNFAIR TRADE PRACTICES ACT (CUTPA)

      (a)     Willful and/or negligent violation of the Connecticut Unfair Trade Practices Act ("CUTPA") by willfully and/or negligently failing to disclose all of the information contained in Lewis Brown's file, within five business days of its receipt of written requests and identification submitted by Plaintiff in November and December of

1999, as required by the Connecticut Consumer Credit Act ("CCCA") and FCRA.

(b)  Forwarding deceptive correspondence to the plaintiff (a "deceptive act" and "unreasonable procedure" inconsistent with assuring maximum possible accuracy). C.G.S. § 42-110b. Experian objects to this assertion as Experian contends that it is not set forth in plaintiff's Complaint.

C.  **RELIEF SOUGHT**

(a)  Actual damages or (if applicable) FCRA statutory damages -- to be determined by the jury

(b)  Punitive damages, attorney's fees and costs – as determined by the Court (if available)

V.  **STIPULATIONS OF FACT**

(1)  Lewis C. Brown ("Lewis") is a retired patent attorney. He is a resident and citizen of the State of Connecticut and the United States.

(2)  Lewis is a "consumer" within the meaning of the Fair Credit Reporting Act.

(3)  Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business located in Costa Mesa, California.

(4)  Experian has a place of business in Allen, Texas, which is the office to which it directs consumer disputes.

(5)  Experian is a consumer reporting agency within the meaning of the Fair Credit Reporting Act.

(6)  Lewis maintained a credit card with Fleet Bank ("Fleet"). This credit card, previously held by Household Bank, but was later taken over by Fleet in April 1999.

(7)  By letter dated October 6, 1999, Fleet Bank informed Lewis that it was reducing his credit limit from $9,000 to $500. In said letter, Fleet stated that its decision was based, in whole or in part, upon information contained in a credit report provided to it by Experian.

(8)  The Fleet letter also stated that Lewis could contact the credit bureau directly and provided Experian's address and telephone number.

(9)  On 10/15/99, Lewis telephoned Experian but was unable to obtain a copy of his report.

(10)   By letter dated October 15, 1999, Lewis requested a copy of his credit file from Experian.

(11)   Lewis did not include his social security number in the 10/15/03 request.

(12)   By letter dated October 20, 1999, Experian (Experian: "informed" / Brown: "told") Lewis Brown that it was unable to access his report using the identification information supplied, and that "therefore, we must require **all** of the following information in order to process your request: full name, including middle name and generation (such as Jr, Sr, I, II, III); current delivery address and two proofs of addresses (such as copies of your utility bill, driver's license, bank statement, etc.); social security number (**required** to obtain your report); date of birth; complete addresses for the past five years (including apartment number and zip code), and spouse's first name (if applicable). Please send this letter with **all** of the required identification information listed above to …"

(13)   By letter dated November 3, 1999, Lewis wrote to Experian providing Experian with

(Experian Presently Stipulates): "… with his full name, address, social security number and two proofs of address."

(Brown Contends Previously Admitted): "… the aforementioned information requested."

(14)   By letter dated November 12, 1999, Experian responded to Lewis' November 3, 1999 request and (Experian: "informed" / Brown: "told") told him that it was unable to locate his credit information.   Experian stated: "If you would like us to recheck our records, please send all of the information [recited in paragraph 12]."

(15)   By letter dated December 10, 1999, Lewis again requested his personal credit information from Experian, providing his full name, current address, two proofs of address, social security number and date of birth.

(16)   By letter dated December 16, 1999, Experian responded to Lewis's request and (Experian: "informed" / Brown: "told") Lewis that it was unable to locate his credit information. Experian stated: "If you would like us to recheck our records, please send all of the information [recited in paragraph 12]."

(17)   After his December 10, 1999 request, Lewis made no other written request to Experian for a copy of his credit file.

(18)   By letter dated February 23, 2000, Fleet reinstated Lewis' credit card limit to $9,000.

(19)    By letter dated July 31, 2000, Fleet told Lewis that his cardholder privileges were terminated due to account inactivity.

(20)    On or about October 18, 2001, Lewis filed this lawsuit against Experian.

(21)    The parties do not dispute that Lewis' file was a "mixed file."

(22)    On or about November 29, 2001, Experian's counsel forwarded Plaintiff's counsel a copy of Lewis' credit report, dated November 8, 2001. Experian then unmerged the files and removed all entries that Plaintiff disputed.

## VI.    PLAINTIFF'S CONTENTIONS

Lewis has sued Experian for violations of the Fair Credit Reporting Act (the "FCRA") and state law violations of the Connecticut Consumer Credit Act ("CCCA") and the Connecticut Unfair Trade Practices Act ("CUTPA") arising from the defendant's alleged failure to follow reasonable procedures to assure maximum accuracy of its reports, and arising from alleged failures to disclose the content of the plaintiff's credit file after repeated proper requests for disclosure. Lewis also alleges that Experian acted willfully, thus, entitling Plaintiff to punitive damages.

Lewis contends that, because he was unable to review and correct the substantial inaccuracies recited in his credit report, the defendant continued publishing derogatory information about him and that he suffered resulting pecuniary and non-pecuniary harms.

Lewis further contends that Experian programmed its computer system to prevent certain FCRA mandated disclosures; disseminated derogatory reports about Lewis allegedly known or reasonably known to be inaccurate to third parties; and, made false, inefficient and misleading statements to Lewis. Further, Lewis contends that a violation of the FCRA is a *per se* violation of the CUTPA and, even if not a *per se* violation, that Experian's communications with him were deceptive and thereby actionable. In support of Lewis' contention that the conduct averred

recites a per se violation, Lewis refers the Court to consider Connecticut's public policy as manifested in the state credit reporting act, C.G.S. § 36a-695.

## VII. DEFENDANT'S CONTENTIONS

Experian contends that it is not liable to Lewis. Experian has admitted that a mixed file occurred with Lewis' file. Experian contends that inaccuracy in a credit report alone is not enough to establish liability. Experian contends that it followed reasonable procedures in preparing and disseminating Lewis' credit report. Even if Lewis could establish that Experian failed to follow reasonable procedures, Experian contends that Lewis fails to establish causation. Experian contends that Fleet will testify that it did not rely on a credit report but on a credit score issued in October 1999. Experian contends that documents will show that Experian provided Fleet with a credit score regarding Lewis on November 1999--one month after Fleet's decision to decrease his credit limit. Regardless of whether Experian provided a credit score in October or November 1999, Experian contends that Fleet will testify that it would have decreased Lewis' credit limit regardless of the October 1999 score. Experian contends that the evidence will show that Fleet in fact terminated Lewis' card for non-use several months after it was reinstated. Finally, Experian contends that Lewis has failed to offer any damages as he has admitted that the reduction in credit had no effect on his purchasing decisions.

Additionally, Experian maintains that it did not violate the FCRA by failing to provide Lewis with a copy of his credit file. Experian contends that it provided Lewis with a prompt response to each of his requests for his credit file based on the information it had that time. Although Experian contends that it was unable to provide Lewis with a copy of his file, Experian contends that its actions do not amount to a violation of the FCRA. Even if Lewis could establish some violation of the FCRA for failure to provide him with a copy of his credit file,

Experian contends that Lewis has not established nor alleged any damage resulting from that violation.

Finally, Experian contends that a violation of the FCRA is not a *per se* violation of the CUTPA nor do Experian's actions standing alone rise to the level of a CUTPA violation. Furthermore, Experian contends that it did not violate the CCRA for failure to provide Lewis with a copy of his credit file.

## VIII.  LEGAL ISSUES

(1)    Did Experian violate the Fair Credit Reporting Act by negligently failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's consumer credit report?

(2)    Did Experian willfully violate the FCRA by willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's consumer credit report?

(3)    Did Experian violate the Fair Credit Reporting Act by negligently failing to furnish all of the information in Lewis' credit file upon proper request?

(4)    Did Experian violate the Fair Credit Reporting Act by willfully failing to furnish all of the information in Lewis' credit file upon proper request?

(5)    Did Lewis incur actual damages as a result of one or more FCRA violations? (In the defendant's words: Was the Plaintiff injured?)

(6)    Did Plaintiff suffer an ascertainable loss under CUTPA?

(7)    Was Plaintiff's actual damages and/or ascertainable loss (injury) proximately caused by an FCRA violation?

(8)    Did Experian fail to follow reasonable procedures to assure maximum accuracy with malice or willful intent to injure Plaintiff?  (Lewis objects to the foregoing insofar as he contends that the foregoing does not recit a legal standard applicable in this matter)

(9)    Did Experian fail to furnish consumer credit files to Plaintiff, upon request, with malice or willful intent to injure Plaintiff?  (Lewis objects to the foregoing insofar as he contends that the foregoing does not recit a legal standard applicable in this matter)

(10)    Does a heightened standard of proof ("clear and convincing evidence") apply to a plaintiff seeking redress under the FCRA and/or CUTPA.

## IX.    VOIR DIRE QUESTIONS

(1)    Please tell us your name and describe your level of education, current occupation, and hobbies.

(2)    Please tell us your marital status, number of children, their ages, education, and occupations, and the education and occupations of your parents.

(3)    Did you, or do you now, attend college or a vocational school? If so, what was, or is, your major course of study?

(4)    If you are retired, what were your former occupations?

(5)    Other than your present position, what other types of jobs have you held?

(6)    Do you associate yourself with a political party? If so, which one?

(7)    Has anyone changed their names?

(8)    Do you know or are you acquainted with any of the parties or attorneys in this case?

(9)    Has anyone had any dealings or contact with the defendant, Experian Information Solutions, Inc.?

(10)    Has anyone ever heard of defendant Experian Information Solutions, Inc.?

(11)    This case involves claims by the plaintiff, Lewis C. Brown, under the Fair Credit Reporting Act, the Connecticut Consumer Credit Act and the Connecticut Unfair Trade Practices Act. Defendant Experian is in the business of credit reporting. In this case, he alleges that Experian violated the Fair Credit Reporting Act, the Connecticut Consumer Credit Act and the Connecticut Unfair Trade Practices Act by failing to follow reasonable procedures to ensure maximum possible accuracy of its credit reports and in failing to provide Plaintiff with copies of his credit file upon request.

Experian denies Plaintiff's allegations and contends that it acted reasonably at all times.

Based on this information and discussion of the case so far, is there anything which you have heard:

A.    That you think might prevent you from being fair to all the parties?

B.     That you would like to discuss further before determining your qualifications to sit on this case?

C.     Do you have strong personal feelings about any aspect of this case?

(12)    Have you or has anyone close to you or your immediate family ever:

A.     Been denied credit or a loan?
B.     Had a negative experience with a bank or lending institution?
C.     Been a plaintiff in a lawsuit or any type of claim?
D.     Declared business or personal bankruptcy?
E.     Been damaged by a bad credit report?
F.     Been in contact with or attended seminars at a credit clinic?

Please explain all "yes" answers to the above.

(13)    Have you or has anyone close to you ever worked at a job that required you to access or review credit reports?

(14)    Have you or any of your close friends or family members ever worked at an insurance company?

(15)    Have you ever owned stock in an insurance company?

(16)    Have you or anyone close to you ever had any training or job experience in any of the following fields:

A.     Banking industry?
B.     Account/bookkeeping?
C.     Credit reporting?
D.     Loan application process?
E.     Finance?
F.     Law?

Please explain all "yes" answers to the above.

(17)    Does anyone have strong personal feelings about the use of consumer credit in our society?

A.     Has anyone chosen not to have a credit card or credit account?
B.     Has anyone ever had a negative experience with a credit reporting company?

(18)    Has anyone ever been a victim of credit card theft or fraud?

(19)    Have any of you ever been in a dispute or controversy with any business, credit bureau, or company concerning your credit standing?

(20)    Have you or has anyone close to you ever disputed any information on your credit report with any credit reporting agency? If yes, were you satisfied with the way your dispute was handled? Which credit reporting agency did you deal with?

(21)    Have you or has anyone close to you ever requested a copy of your credit report from a credit reporting agency? If yes, were you satisfied with the way your request was handled? Which credit reporting agency did you deal with?

(22)    Have you ever purchased a copy of your credit file?

(23)    Have you ever reviewed a copy of your credit file?

(24)    To your knowledge, have any of you, or any members of your families or close friends ever sued anyone or presented a claim against anyone in connection with a matter similar to this case? If so, did the matter terminate satisfactorily so far as you were concerned?

(25)    Have any of you been turned down for credit? If yes, please explain.

(26)    Have any of you ever had a credit line reduced? If yes, please explain.

(27)    Have you or has anyone close to you ever discovered any inaccurate information in your credit report? If yes, did you dispute the information with a credit reporting agency?

(28)    Have any of you served as a juror in any other case? If so, please describe the nature of the cases you have heard, the courts you were in, and whether they were civil or criminal matters.

(29)    Have you or has anyone close to you ever been required to make numerous telephone calls or send numerous letters often attempting to remedy a business or personal matter? If so, please explain.'

(30)    Do you know of anything of a personal nature which might affect your ability to devote full and complete attention to this case? Do you know of any hardship sitting as a juror in this case would impose?

(31)    The defendant in this action is a corporation. Do you have any belief or feeling for or against corporations that might prevent you from being a fair and impartial juror in this case?

(32)    Will you be able to put aside any ideas you may have about what law should be applicable here and apply only the law the judge gives you, regardless of whether or not you agree with it?

(33)    In a civil lawsuit, the burden is on the plaintiff to prove certain elements of his case by a preponderance of the evidence. The burden is not on the defendant to prove that it is not liable in this case. If the plaintiff fails to meet his burden of proof on each of his claims, will you be able to render a verdict for the defendant?

(34)    Although as humans, sympathy is natural, can you put aside any feelings of sympathy that you might have for the plaintiff and render a verdict on the proof of evidence offered in this case?

(35)    Do you know of any other reason, or has anything occurred to you during this question period, that might make you doubtful that you would be a completely fair and impartial juror in this case? If there is, it is your duty to disclose the reason at this time.

## X.    LIST OF WITNESSES

(1)    Lewis C. Brown (Plaintiff)
P.O. Box 286
Rowayton, CT  06853

   (a)    Lewis has knowledge of the allegations and claimed damages set forth in the Complaint. He will testify about his communications with Fleet Bank, Experian, the Comptroller of the Currency and the Federal Trade Commission, as well as about the pecuniary and emotional harm he allegedly suffered. Further, he will testify about the information reflected in the Experian credit report produced during discovery.

   (b)    Estimated duration:  3-4 hours

(2)    Kim Hughes
Consumer Affairs Specialist
701 Experian Parkway
Allen, Texas  75013

   (a)    Ms. Hughes has knowledge of and will testify to plaintiff's contacts with Experian, plaintiff's Experian consumer relations file and Experian's consumer assistance and reinvestigation procedures.

   (b)    Estimated duration:  2-3 hours

(3)    David Browne (Defendant's Expert Witness)
Experian Information Solutions, Inc.
505 City Parkway West
Orange, California  92668

(a)    Mr. Browne has knowledge of and will testify to Experian's credit reporting systems and procedures.  (See Affidavit of David Browne, attached as Exhibit A.)

(b)    Estimated duration:  3-6 hours

(4)    Fleet Bank
        Scott Smaniotto
        107 Whitney Avenue
        New Haven, CT  06510

(a)    Fleet Bank is believed to have knowledge and information regarding Lewis' Fleet Bank account, and communications between Fleet Bank and Lewis.  Mr. Smaniotto is expected to testify about Fleet Bank's policies and procedures, and to authenticate and explain Fleet Bank's records speaking to its decisions to reduce, restore and failure to renew Lewis' line of credit.

(b)    Estimated duration:  1/2-1 hour

(5)    Mary M. Woehrle
        2728 Bacon Street
        Berkley, MI  48072

Experian objects to the testimony of Mary M. Woehrle (See Motions In Limine)

(a)    Ms. Woehrle is expected to testify that she is Lewis' "social confidant," and that Lewis confided extensively in her contemporaneous with the events averred in the complaint.  She is also expected to testify that she has extensive knowledge of Lewis' sentiments, and that she personally observed manifestations of distress, frustration and confusion while discussing the events averred.

## XI.    EXHIBITS

### A.    PLAINTIFF'S EXHIBITS

| Document Description | Defendant's Objection, if any |
|---|---|
| 1.  October 6, 1999 letter to plaintiff from Fleet | Hearsay |
| 2.  October 15, 1999 correspondence from plaintiff to Experian (& handwritten notes to self) | |

| | |
|---|---|
| Experian (& handwritten notes to self) | |
| 3. October 17, 1999 letter from plaintiff to Fleet (w/ Postal Certification) | Relevance and undue prejudice |
| 4. October 20, 1999 letter from Experian to plaintiff | |
| 5. October 29, 1999 letter from Fleet to plaintiff | Hearsay |
| 6. November 3, 1999 correspondence from plaintiff to Experian (w/ Postal Certification) | |
| 7. November 4, 1999 letter from plaintiff to Fleet | Relevance and undue prejudice |
| 8. November 12, 1999 letter from plaintiff to Experian | |
| 9. December 2, 1999 letter from Fleet to plaintiff | Hearsay |
| 10. December 9, 1999 letter to Fleet from plaintiff | Relevance and Undue Prejudice |
| 11. December 10, 1999 correspondence from plaintiff to Experian | Hearsay |
| 12. December 15, 1999 correspondence from plaintiff to Fleet | Relevance and Undue Prejudice |
| 13. December 16, 1999 letter from Experian to plaintiff | |
| 14. December 16, 1999 letter from plaintiff to Federal Trade Commission (w/ Postal Certification) | Relevance and Undue Prejudice |
| 15. December 29, 1999 letter from plaintiff to Federal Trade Commission | Relevance and Undue Prejudice |
| 16. December 30, 1999 letter from plaintiff to Fleet | Relevance and Undue Prejudice |
| 17. January 10, 2000 letter from plaintiff to the Comptroller of the Currency (w/ Postal Certification) | Relevance and Undue Prejudice |
| 18. February 17, 2000 letter to plaintiff from the Comptroller of the Currency | Relevance and Undue Prejudice |
| 19. February 23, 2000 letter to plaintiff from Fleet reinstating credit limit | Hearsay |

| | |
|---|---|
| reinstating credit limit | |
| 20. March 9, 2000 letter from plaintiff to Fleet | Relevance and Undue Prejudice |
| 21. March 16, 2000 letter to plaintiff from Fleet | Relevance and Undue Prejudice |
| 22. Plaintiff's March 9, 2000 Trans Union credit report (& handwritten notes to self) | Relevance and Undue Prejudice |
| 23. April 14, 2000 letter from plaintiff to the Comptroller of the Currency | Relevance and Undue Prejudice |
| 24. June 9, 2000 letter to plaintiff from the Comptroller of the Currency | Relevance and Undue Prejudice |
| 25. July 31, 2000 letter to plaintiff from Fleet | Relevance and Undue Prejudice |
| 26. August 7, 2000 letter from plaintiff to the Comptroller of the Currency | Relevance and Undue Prejudice |
| 27. August 28, 2000 letter to plaintiff from Fleet | Relevance and Undue Prejudice |
| 28. September 13, 2000 letter from plaintiff to Fleet | Relevance and Undue Prejudice |
| 29. January 30, 2001 letter to plaintiff from Comptroller of Currency | Relevance and Undue Prejudice |
| 30. March 7, 2001 letter from plaintiff to Comptroller of Currency | Relevance and Undue Prejudice |
| 31. March 7, 2001 letter from plaintiff to Comptroller of Currency | Relevance and Undue Prejudice |
| 32. August 9, 2001 letter from plaintiff to Comptroller of Currency | Relevance and Undue Prejudice |
| 33. September 20, 2001 letter to plaintiff from Comptroller of Currency | Relevance and Undue Prejudice |
| 34. FOIA Publication of Social Security Administration re: Social Security Number Allocations, @ | Relevance |

| | |
|---|---|
| http://www.ssa.gov/foia/stateweb.html. | |
| 35. Plaintiff's Experian credit report, dated 11/08/01 | |
| 36. Plaintiff's Trans Union Report, 03/09/00 | Authentication and Relevance |
| 37. Plaintiff's Trans Union Report, 12/08/92 | Authentication and Relevance |
| 38. Journal Excerpts of Lewis C. Brown (as produced in discovery) | Speculative, Relevance and Undue Prejudice |
| 39. 15 U.S.C. § 1681 (FCRA: Congressional Findings and Statement of Purpose) | |
| 40. Complaint | |
| 41. Answer | |
| 42. 26(f) Report (Statement of Undisputed Facts) | |
| 43. Experian's 6/21/02 Response to Plaintiff's Request for Admissions | |
| 44. Experian's 9/16/02 Local 9(c)(1) Statement | |
| 45. Plaintiff's 11/08/02 Local 9(c)(2) Statement | |

B.    **DEFENDANT'S EXHIBITS**

| Document Description | Plaintiff's Objection, if any |
|---|---|
| 1. Disclosure Log EXP 0158-0159 | |
| 2. ACDV Response Activity Report EXP 0160 | |
| 3. Administrative Report EXP 0161-0169 | |
| 3. 7X Report EXP 0170-0179 | |
| 4. Dispute Resolution Log ("D/R Log") EXP 0180-0194 | |
| 5. Experian's Mixed Files Policy & Procedures EXP 0195-0199 | |

| 0195-0199 | |
|---|---|

## XII.  DEPOSITION TESTIMONY

None Anticipated (Plaintiff Contends: Mary Woehrle: Possible)  Experian objects to the use of any testimony given by Mar Woehrle.

## XIII.  REQUESTS FOR JURY INSTRUCTIONS

Pursuant to the Court's order, Defendant Experian Information Solutions, Inc. ("Experian") submits its proposed jury instructions, attached hereto as Exhibit B.

Lewis also submits his objections and proposed modification to the foregoing jury instructions, attached hereto as the second half of Exhibit B.

## XIV.  ANTICIPATED EVIDENTIARY PROBLEMS

See Attached Motions in Limine (Exhibit C)

## XV.  PROPOSED FINDINGS AND CONCLUSIONS

Jury trial - not applicable.

## XVI.  ESTIMATED TRIAL TIME

Two days.

## XVII.  FURTHER PROCEEDINGS

None.

## XVIII. ELECTION FOR TRIAL BY MAGISTRATE

The parties have not agreed to a trial before a Magistrate.

## XIX.  EXPERIAN'S PROPOSED VERDICT FORM

Pursuant to the Court's order, Defendant Experian Information Solutions, Inc. ("Experian") submits its proposed verdict form, attached hereto as Exhibit D.

Lewis' proposed verdict form (and joint stipulation) is concurrently attached and incorporated as part of Exhibit D.

Dated: New York, New York
      December 22, 2003

Respectfully submitted,

JONES DAY

By: _____
George Kostolampros
222 E. 41st Street
New York, New York 10017
(212) 326-3939

Attorneys for Defendant Experian
Information Solutions, Inc.



Lewis C Brown_expert

05/10/02

## EXPERT REPORT OF DAVID A. BROWNE

### I. Background and Qualifications

Since September 1996, I have been employed as a Compliance Manager for Experian Information Solutions, Inc. ("Experian"), formerly known as the Information Services Division, TRW Information Systems Group, of TRW Inc. Prior to that date, I held the same position with TRW in its Information Services Division. I joined TRW as a system analyst in January 1977, and during my employment with TRW, my assignments included redesigning TRW's credit report and the specification of changes to TRW's computer system. I also tested changes to the computer system and developed the business rules for some of those changes. My current duties include helping to ensure that Experian's computer systems and procedures comply with federal and state credit reporting laws and Experian's requirements for quality. I am fully familiar with the procedures that Experian employs in gathering and storing credit information, and in assembling credit reports and consumer disclosures.

A list of my qualifications and work experience is included in my Curriculum Vitae, which is attached hereto. I have not been compensated for making this report, other than my usual salary as an Experian employee. A list of other cases in which I have testified as an expert at trial or by deposition within the preceding four years is also attached hereto.

### II. Opinions and Bases

#### A. Importance of Consumer Credit Reporting

Throughout the first half of this century, unless a borrower and his or her reputation were personally known to a lender, credit was out of the question; newcomers to a city or region therefore had little hope when it came to obtaining credit. As time went on, lending evolved as lenders began



DEPOSITION
EXHIBIT
14
5/16/02

contacting one another and sharing information about potential borrowers' payment habits. The development of centralized repositories of consumer credit information in the 1960's led to further evolution in the granting of consumer credit. Today, a lender can check with a consumer reporting agency and, within minutes, enable a newcomer from across the country to obtain an apartment, finance a mortgage, or buy a car.

Both consumers and credit grantors benefit from the availability of consumer credit information that is as complete, accurate and up-to-date as possible. If such information were not readily available, consumers who have worked hard to maintain a good credit histories might be unable to obtain credit, and credit grantors would lose the opportunity to do business with these excellent credit risks. Conversely, credit grantors might grant credit to poor credit risks, and the resulting losses to the credit grantors would eventually be passed on to consumers in the form of higher interest rates or transaction fees.

**B.     Experian's Procedures**

As a consumer reporting agency, Experian acts as a conduit of credit information that is pertinent to prudent credit granting decisions. When subscribers report credit information to Experian, they report it along with certain identifying information designed to link the credit items to the appropriate consumers. Similarly, when a subscriber requests credit information from Experian in the form of a credit report, the subscriber provides the same type of identifying information about the particular consumer. Experian's computer system does not store completed credit reports. Instead, the system stores items of credit information that are linked to identifying information. To determine which of the hundreds of millions of items of credit information in its files should be displayed on a particular credit report, Experian's computer system compares and

"matches" the identifying information provided in the request or "inquiry" with the identifying information that was reported with the various credit items.

Experian has developed reasonable procedures to ensure maximum possible accuracy when credit information is initially reported to Experian by subscribers. Experian has also developed reasonable procedures to ensure maximum possible accuracy when assembling credit reports and consumer disclosures following receipt of an inquiry or a request for disclosure.

Recognizing that no system can be entirely flawless, Experian has implemented procedures designed to involve the consumers who are the subjects of the information sought from Experian. Experian makes available to any consumer a copy of his or her credit report, specifically to give consumers an opportunity to review the information reported about them and to advise Experian of any potential inaccuracies. Thus, Experian has developed reasonable procedures to ensure a timely and effective consumer disclosure and dispute verification process.

Additionally, Experian has implemented procedures to reinvestigate disputes by consumers communicated to Experian regarding the completeness or accuracy of information appearing on their credit report or file disclosure.

Experian has also developed a sophisticated, but stringent, procedure to be used whenever it is apparent that consumer files have become mixed. These reasonable procedures are designed to prevent the consumer's files from becoming mixed in the future.

## C.   Subscriber Requirements

Experian will only accept information from a subscriber if the subscriber has satisfied Experian that it can reliably report accurate information. Prior to Experian's acceptance of credit information from a new subscriber, Experian meets with the subscriber and conducts a study to

(3)

ascertain whether the subscriber can meet Experian's strict reporting standards and that the subscriber is an entity which will use the information in connection with a credit transaction involving the consumer on whom the information is furnished, or for employment purposes.

Before furnishing any credit reporting information, Experian requires that all of its subscribers sign a subscriber contract wherein the subscriber expressly agrees, *inter alia*, that they will use credit information received from Experian solely in connection with transactions involving the consumer as to whom the information is sought or for employment purposes and that they will not use this information for purposes prohibited by law; that the information will be maintained in strict confidence and disclosed only to employees whose duties reasonably relate to the legitimate business purpose for which the information is requested; and that the subscriber will not sell or otherwise distribute the information to third parties. Experian also reviews and provides the subscriber with a manual called the Consumer Reporting Resource Guide which details the precise format to be followed by the subscriber's data processing personnel when they program the subscriber's computer system to transmit a consumer's payment information to Experian. Each subscriber is assigned a specific password and series of codes, without which they are unable to access Experian's files, or any of the individual consumer reports within Experian's files.

Experian has developed reasonable procedures to ensure maximum possible accuracy when credit information is initially reported to Experian by subscribers. When subscribers report credit information to Experian, they report it along with certain identifying information designed to link the credit items to the appropriate consumers. Similarly, when a subscriber requests credit information from Experian in the form of a credit report, the subscriber provides the same types of identifying information about the particular consumer. The subscriber is not only required to

(4)

Lewis C Brown_expert

appropriately identify themselves and the consumer inquired about, but must also certify the specific reasons for which the information is sought. An inquiry by a credit grantor remains on the consumer's credit report for a minimum period of six months (two years for employment purposes) so that the consumer may see who has been reviewing his or her credit and for what purpose.

Additionally, Experian has implemented procedures to reinvestigate disputes by consumers communicated to Experian regarding the completeness or accuracy of information appearing on their credit report or file disclosure.

Experian has also developed sophisticated procedures that are implemented whenever Experian becomes aware that consumer files have become mixed. These reasonable procedures are designed to prevent the consumer's file from becoming mixed in the future.

## D.    Identifying Information

In many aspects of daily life, we are assigned "I.D. numbers." When we get a job, get a telephone, take out an insurance policy, open a bank account, or get a driver's license, for example, we are assigned such numbers. In situations such as these, companies devise numeric or alphanumeric identification systems suitable for the unique identification of the company's customers or employees. Such systems are designed to decrease the risk of mis-identification and to simplify the process of correct identification.

In developing procedures for credit reporting, credit reporting agencies such as Experian had to design a system that relies largely upon identifying information that is not unique, that is used inconsistently, and that is supplied to Experian by third parties. Unlike the employer, school, bank, or telephone company, therefore, Experian is unable to assign unique identifiers to consumers.

(5)

05/10/02

Faced with this reality, Experian had to design and utilize a system that accommodates the fact that Experian could not control the identifying information used by that system.

When a lender wants to make a prudent credit granting decision, and decides to review the potential borrower's track record to make that decision, the lender must request identifying information from the consumer. The identification given by that consumer is then used by the lender to request information from Experian about that consumer. In processing such requests, Experian has to rely on the identification provided initially by the consumer and secondarily by the lender in order to retrieve the consumer's credit information. In other words, the process that results in identifying information being provided to Experian begins with the consumer providing such information to the potential credit grantor on an application form. An operator at the credit grantor has to read and interpret the identifying information provided on the application form and then key this into a terminal for transmission to Experian. Experian has no way to control the accuracy or completeness of identifying information provided to it. Nor is Experian in a position to know whether the credit grantor has correctly identified the applicant. Moreover, a number of business factors (consumers' privacy rights, etc.) have a significant impact on what identification credit grantors can store on their automated systems in a form that can be communicated to Experian.

With approximately 200 million borrowers in the country, it is important to be able to accurately retrieve and display all information that belongs to a particular application, and at the same time not display information that belongs to another consumer. Such a task is possible if the applicant's information is entirely unique, consistently used, and always accurate whenever used by the consumer or by the creditor.

(6)

Lewis C Brown_expert                                                                        05/10/02

Unfortunately, the realities of the credit business do not provide such a perfect scenario. Identifying information, when supplied to Experian, both when credit information is reported and when credit reports are requested, might not be complete, consistent, unique or accurate. For example, subscribers may report credit information or request credit reports without providing the consumer's social security number, generation code, or year of birth. In addition, subscribers and consumers sometimes provide incorrect identification to Experian, either because of a mistake (such as a misspelling or misreading or transposed numbers) or for other reasons such as attempts to hide a bad credit record from lenders. Subscribers and consumers also provide Experian with changed or inconsistent identification (as may occur when consumers routinely use more than one address or when consumers use more than one name or nickname, or when consumers use different forms of their name. For example, consumers sometimes use their full middle name but at other times, they might use a middle initial or even neither. Alternatively, this may be how lenders report the consumer's identification to Experian. Furthermore, consumers frequently move to a new address, sometimes acquire a second home, begin using a second address that is not their residence and when they do this, they rarely, if ever, think to notify Experian. Yet Experian is expected by consumers and by lenders to still be able to provide a complete credit report on the consumer. Consumers and lenders do not want a credit report that contains only those credit accounts that were obtained using the exact same form of their name and the exact same address as is being used to pull the consumer's credit report. They want to see the consumer's entire credit history.

For these reasons, Experian could not require an exact matching of all identifying information before it allows a credit item to be displayed on a consumer's credit report. If Experian were to require 100 percent matching, a great deal of accurate credit information would not be

(h)

Lewis C Brown_expert
05/10/02

displayed on consumers' credit reports. Such a result would be detrimental to those consumers who have worked hard to maintain good credit, since their good credit histories might not be displayed when a creditor asks to review their credit report. Similarly, Credit Repair Clinics frequently advise their clients to modify part of their identification in order to hide their accurate bad credit. If successful, such consumers may be able to reestablish credit which they cannot or will not repay with the resulting losses being passed on to consumers who do pay their bills, in the form of higher interest rates or lending fees.

### E.    Experian's Matching System

To address these and other problems, and to assure maximum possible accuracy of credit reports, Experian developed a reasonable matching system, based on extensive statistical studies. Experian's matching system uses a "basket" of identifiers, which are weighted based on many factors, to determine which credit items to display on a particular credit report. Experian's computer system weighs a number of factors devised over years of experience in the consumer credit reporting business. The *factors* facts used and the weight given to each factor have been revised from time to time over the history of Experian's consumer credit business. These factors, and the accurate results provided by their utilization, are the key elements of Experian's business that distinguishes it from its competitors. As such, Experian keeps such information highly confidential and has not disclosed the details of its matching system to anyone outside of Experian despite being involved in credit reporting litigation over a number of years.

Experian's matching system was designed to permit some credit items to display in spite of certain variations in identifying information. Variations are permitted, however, only after Experian

performs thorough testing to ensure a high level of accuracy, and to minimize the chances that credit information belonging to one consumer would display on another consumer's credit report.

No manual or computer matching system can prevent credit information belonging to one consumer from displaying on the credit report of another consumer when critical identifying information supplied to Experian as belonging to one consumer matches, or matches extremely closely, to the other consumer and when they are reported by lenders or collection agencies as living at the same or an extremely similar address. This is what occurred in this case. Recognizing that this could occur, Experian developed a procedure that upon notification that a mixed file has occurred, due to the fact that information was reported for two consumers who use or have used the same address and extensive other matching identification, Experian could apply that stringent procedure to ensure a mixed file did not re-occur in the future. This procedure is designed to only display credit information that was reported with critical identification that exactly matches the identification that is provided on the inquiry. As would be expected of such a stringent procedure, it is possible that an incomplete credit report or even no credit report might result in the event that incomplete, inconsistent or incorrect identification were to be provided or used when pulling a credit report for the consumer. The procedures name is Do Not Combine.

The Experian matching system is frequently reviewed and refined through an on-going process involving extensive review by individuals with significant experience, including, for example, experience with identification reported by subscribers, Experian's search and matching rules, and the design of matching systems.

### F.    Reinvestigation of Disputes

Lewis C Brown_expert

05/10/02

Experian has implemented procedures to reinvestigate disputes by consumers communicated to Experian regarding the completeness or accuracy of information appearing on their credit reports or file disclosures and to institute corrections wherever appropriate. These procedures and the systems that support them are made available to affiliate bureaus that are also provided with the necessary training in their use.

With regard to furnishing copies of a consumer report to the consumer, Experian issues consumer disclosures only to the requesting consumer who is the subject of the information. In order to request such reports, Experian asks the consumer to provide his first, middle and last name, generation, spouse's name, current address, previous address for the past five years, social security number and year of birth. When a consumer's request does not provide all of the information necessary, the consumer is advised by a printed notice on the disclosure that the disclosure may be incomplete and asks the consumer to provide all missing identifying information. No disclosure will be made unless the consumer provides at least a full name and present address.

If a consumer questions the accuracy of, disagrees with, or challenges in part or in full an item of information on his or her credit report with Experian, a dispute exists and Experian will reinvestigate it with the source of information. Experian reinvestigates every item the consumer disputes or changes it as requested by the consumer. Experian removes all unverifiable information and effects corrections of any data as instructed by the source. In the case of a mixed file, as discussed above, a "Do Not Combine" flag is placed on the file of the consumer. Immediately upon completion of a reinvestigation of a disputed credit file, changes, deletions or additions are made to the consumer's report and a disclosure confirming Experian's reinvestigation findings is mailed to the consumer along with an explanatory brochure explaining the consumer's rights under the Fair

(10)

Lewis C Brown_expert

Credit Reporting Act to further dispute Experian's reinvestigation findings; the consumer is advised that he may file a brief statement explaining why the information is not accurate. Should the consumer further dispute the results of a reinvestigation, Experian will then note that the information is disputed on the consumer's statement, or a provide a summary of it in his consumer report and further note that the item is disputed in all subsequent reports. Experian further advises the consumer that, upon the consumer's request, it will send a copy of the updated report to any organization that reviewed the consumer's credit history within the past six months or to employers who have inquired in the last two years.

### G.    Experian's Procedures in this Case Were Reasonable

The Experian procedures in place at all times during the events giving rise to this lawsuit were reasonable procedures designed to ensure maximum possible accuracy in credit reports.

From reading the complaint and reviewing other documents produced in this case, it is clear that a mixed file has occurred in which credit information belonging to two consumers with the same or essentially the same names has combined. A mixed file can come about only where different individuals have or use the same or essentially the same name information and either live at the same address (which probably didn't happen in this case), have a very similar address or are reported by one or more lenders or collection agencies as living at the same address (which appears to have happened in this case).

Experian is not in a position to mandate and enforce a requirement that consumer identification provided by consumers and lenders is always accurate, entirely unique, always consistent and belongs to the consumer before such identification is reported to Experian when an inquiry is made or when credit information is being reported to Experian.

Lewis C Brown_expert

05/10/02

Lenders or those collecting on a debt sometimes report information on one individual along with identifying information that belong to the other. For example, a lender trying to collect on a debt may see that it has two different addresses for what appears to be the same consumer due to the name matching. If the lender is unsuccessful in contacting the consumer at the one address, they may try using the other address both for making inquiries to Experian and when reporting the debt. Collection agencies also will do this sometimes. Experian has no way to detect whether this is an additional address for the consumer, a real address change or the reporting an erroneous address for the consumer

Given that a credit reporting agency doesn't normally meet consumers or have any direct contact with consumers when it comes to processing a consumers credit information into its files, it has to rely on name and address information to be able to tie consumer credit information to a particular consumer. Furthermore, it has to rely on such identifying information being provided by lenders and collection agencies. The same is true when consumers move from one address to another or acquire a second home. Consumers will typically notify family and friends when they change address or acquire a second address but not think to notify credit bureaus like Experian. For this reason, credit reporting agencies like Experian cannot rely on getting an address change notification or an additional address notification from consumers. Instead, it has to pick up an address change or additional addresses when a different address is reported along with key identifying information for the consumer. Unfortunately, as already mentioned above, there is no unique identifier that a credit reporting agency such as Experian can use to tie consumer credit information to particular consumers. Given the fact that consumers move address and don't tell consumer credit reporting agencies, that consumers are inconsistent about the identification they use,

(12)

that lenders don't always report complete identification, that identification is sometimes reported incorrectly, that no universal identifier can be used for identifying consumers (a social security number cannot be used as a universal identifier because it is prone to errors including being mis-read, having digits transposed, having a spouse's social being reported as the husband's on a joint account and the fact that a credit reporting agency is unable to verify social security numbers), it is never completely possible to prevent a mixed file from occurring. However, Experian has spent enormous sums of money over the years to develop and refine search and matching rules that attempt to avoid files from mixing. Had Experian not been successful in minimizing the possibility of a mixed file, its business would have been badly impacted because lenders are in business to make loans, not turn them down, and, quite often, lenders want to be able to sell merchandise. If it became known that Experian's consumer credit reports were not highly accurate due to mixing files and therefore could not be relied upon, these same lenders could obtain their credit reports very easily, often at the touch of a button, from Experian's competitors.

Experian has developed a state of the art computer system for facilitating the consumer disclosure, dispute, reinvestigation and correction process. It is designed to permit the prompt disclosure to consumers of their credit reports, an expeditious method of entering consumer disputes and of automatically forwarding these disputes to those entities that reported such information. It is also designed to handle in an automated manner the subsequent responses received from those reporting the information and for the automated processing of such responses as well as for the preparation and mailing to consumers of the final updated copy of their disclosure report. This system is working very well and permits Experian to expedite the process of making corrections to the credit reports of consumers when appropriate.

05/10/02

In this case, the plaintiff requested his credit disclosure on more than one occasion. Unfortunately, Experian was not able to produce it using the identification provided by the plaintiff. Given that this turned out to be a mixed file situation, it is very likely that when Experian's computer system attempted to match the identification provided by the plaintiff with the identification that was at that time in Experian's file, Experian's matching system determined that there was not sufficiently strong a match for it to safely display information that was found in its files. While it is very unfortunate that Experian was unable to provide the plaintiff at that time with a copy of his consumer disclosure report, Experian's matching system determined that at that point in time, it could not find information in its files that it could be reasonably satisfied belonged to the plaintiff. At no time was there any attempt to deny the plaintiff a copy of his credit disclosure. What happened in this respect, is very unusual but it is something that cannot be avoided when stringent and cautious match and display rules have to be applied to identification that is often inconsistent, incomplete, contains errors and is not unique and over which Experian is unable to exercise any control.

## III.    Data and Other Information Considered in Forming Opinions

In forming the above opinions, I relied upon my years of experience in the consumer credit reporting field, and the knowledge I have acquired over the years regarding consumer credit reporting in general, Experian's consumer credit reporting system in particular, and the credit granting industry. I also relied upon my years of experience in computer software development and design outside the consumer credit reporting field. Additionally, I relied upon documents produced by the parties in this case, including copies of Plaintiff's Experian credit reports and copies of

(13)

Lewis C Brown_expert
05/10/02

consumer dispute verification responses provided to us by creditors. I expect to use these documents or portions of these documents as exhibits to support my opinions. I have not had the opportunity to comprehensively study all documents produced in this case. I therefore reserve the right to supplement this report based on a comprehensive study of these documents as well as any further information regarding this case of which I may become aware.

David A. Browne

(14)