IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                         )

**LEWIS C. BROWN**                        )

                      **Plaintiff**     )

  vs.                                     )        Case No. 3:01CV1967 (RNC)

**EXPERIAN INFORMATION SOLUTIONS INC.**   )

                     **Defendant**    )

_____  )        **April 5, 2004**

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF**

**J.T.M.R. OBJECTIONS**

Re:    Evidence of Emotional Distress

    Experian argues that the court should exclude every document evidencing the plaintiff's emotional distress because introducing these documents would be "cumulative" of the plaintiff's testimony (speaking to emotional distress).

    In order to sustain an award of emotional distress, a plaintiff must offer credible evidence that he (in fact) suffered emotional distress. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001)("Evidence of emotional distress must be supported by evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others.") citing *Carey v. Piphus*, 453 U.S. 247, 264 (1978); also: *Miner v. City of Glenn Falls*, 999 F.2d 655, 662 (\*\*\*

1

1993) (Mental distress award upheld where evidence was primarily plaintiff's own testimony and the testimony of his wife, accompanied by "… some objective correlation with events described …"); but see: *Rakovich v. Wade*, 819 F.2d 1393, 1399 at n.6 (7th Cir. 1987) citing *Crawford v. Garnier,* 719 F.2d 1317, 1324 (7th Cir. 1983) ("However, that is not to say that an injured person's testimony, standing alone, will never be sufficient to establish damages." "The Jury saw the plaintiff, heard his testimony, and found him credible. His testimony in this regard was sufficient proof of his injury). For two years, the plaintiff relentlessly engaged in an extensive letter writing campaign, the principal aim of which was securing a copy of his credit report. The plaintiff's documentation of his efforts (and the passion therein evidenced) is meticulous. The defendant aims to exclude the plaintiff's correspondence *so that it might argue turn around and argue* that the plaintiff offered "no supporting evidence" of his prolonged emotional distress – a *profound* irony (and a more profound injustice).

  As countless times before, the defendant aims to characterize the plaintiff's correspondence as principally focusing on "age discrimination." Both his honor and Judge Martinez have repeatedly rejected this argument. This court has previously opined that the fact finder could reasonably find Experian's failure to comply with the FCRA was the proximate cause of the plaintiff's age discrimination speculation. A fact finder could similarly find that the principal theme evidenced in the plaintiff's correspondence was the plaintiff's inability to secure his credit report (*not* age discrimination). The defendant's motion for summary judgment and subsequent motion in limine (each of which advanced the same "age discrimination" and "undue prejudice" arguments) were rejected.

The plaintiff's extensive journal notes (another subject of attack) are but another example of corroborative evidence of emotional distress (concurrently useful to refresh recollection).

Say what the defendant may of any document viewed in isolation -- the whole is greater than the sum of its parts. The cumulative written evidence may prove key to the plaintiff's securing an award of emotional distress – and sustaining that award on appeal.

Re:    Other Hearsay Exceptions

Experian aims to exclude the seminal (October 6) letter from Fleet initially reducing the plaintiff's credit limit from $9,000 to $500. This letter from Fleet attributed the reduction to a derogatory Experian credit report.

As previously discussed, this letter may be introduced for its effect on the reader (*why* the plaintiff *thought* he was being defamed and *how*). Effect on the reader is not, however, the only reason why this letter should be admitted.

This letter concurrently evidences two other issues of material fact: that Experian (*in fact*) defamed the plaintiff (and *how*).

This letter is (arguably) the best evidence that Experian (in fact) defamed the plaintiff. Fleet Bank had a legal obligation to identify the source of the derogatory information upon which its decision was based (pursuant to the Fair Credit Reporting Act and Equal Credit Opportunity Act), and has since testified that there is absolutely no evidence remotely suggesting that Fleet based its decision on anything other than a derogatory Experian report.

The interests of justice will be best served by its admission (particularly as Experian

3

refuses to stipulate that it issued a report to Fleet until November 1999).

Experian has known of the letter since this outset of this litigation and has had fair opportunity to meet it. Experian extensively examined Fleet at deposition about this letter.

In sum, the document easily satisfies each prong of the hearsay rule's residual exception: FRE 807.

Even were FRE 807 not otherwise available, the contents of the letter would still come in under FRE 803(15) as a "relevant statement in" a document affecting an interest in property. The circumstance in which Fleet's citation to Experian is made (a disclosure mandated by the Equal Credit Opportunity Act and Fair Credit Report Act) affords adequate assurance of its trustworthiness.

In response, the defendant lambastes the plaintiff for "not reading" the exception in its entirety. It is Experian, however, who failed to read. The applicable subsection is not (14) but (15). Experian cites and argues the wrong rule of evidence.

Re: Letters from the Comptroller

Experian argues that the court should exclude correspondence from the comptroller of the currency as irrelevant.

As previously discussed, this comptroller's correspondence is relevant for its effect on the plaintiff. Effect on the plaintiff is not, however, the only purpose for which it the comptroller's correspondence is relevant. The *factual findings* of the comptroller's investigations (made pursuant to authority granted by law) are admissible under FRE 803(8)(C).

The comptroller's investigation confirms (and rebuts Experian's assertion to the contrary) that Fleet's initial decision to reduce the plaintiff's credit limit was based on a derogatory Experian report. This finding is reflected in several letters from the comptroller. Its findings are quite relevant indeed.

Re:  FOIA Publication of Social Security Administration re: Number Allocations

Experian argues that the SSA document should be excluded because Experian is willing to stipulate that the five social security numbers appearing on the plaintiff's credit report hailed from four different states. That the numbers hailed from four different states is only part of the equation. The SSA document evidences not only the identity of such states, but also that such information was made publicly available. Its added relevance will factor into the plaintiff's case. There is no harm in its admission (but possible harm in its exclusion). The document's contents and availability are concurrently capable of judicial notice.

Re: Authentication

Experian argues that the plaintiff cannot authenticate his Trans Union credit reports. The plaintiff begs to differ. Authentication may be had provided only that the evidence is "sufficient to support a finding" that the document in question is what its proponent claims. FRE 901  It has never been held that the only person capable of authenticating a thing is its author. Where such the case, illustrations such as FRE 901(2) or FRE 901(5) would be incomprehensible. The plaintiff can readily satisfy this requisite showing.

5

Experian argues that the plaintiff's Trans Union reports are irrelevant (per FRE 401). They clearly are not. Fleet testified (at deposition) that Fleet receives its credit reports from one of two sources: Experian or Trans Union. The plaintiff's Trans Union reports are without blemish – further eroding Experian's contention that it did not furnish Fleet with a derogatory report in October 1999.

Respectfully Submitted,

LEWIS C. BROWN

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC //* Shaw's Cove 5, Suite 202 // New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001 Tel: (860) 442-2265 // Fax: (860) 439-0295

## *Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

Jones, Day, Reavis & Pogue
Attn: Arun Chandra
222 East 41st Street
New York, NY 10017-6702          4/5/04

## *Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Clerk of Court
450 Main Street
Hartford CT 06103              4/5/04

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a copy of the document(s) attached was served upon each addressee by USPS first class mail on the date(s) reflected.

4/5/2004

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC*
Shaw's Cove 5, Suite 202
New London CT 06320
Conn. Juris No. 419408 // Fed. Bar No. 23001
Tel: (860) 442-2265 // Fax: (860) 439-0295

## *Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Chambers (Chatigny J.) (C. Copy)
450 Main Street
Hartford CT 06103              4/5/04