**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| _____ ) | |
| **LEWIS C. BROWN** ) | |
| ) | |
| **Plaintiff** ) | |
| vs. ) | Case No. 3:01CV1967 (RNC) |
| ) | |
| **EXPERIAN INFORMATION SOLUTIONS INC.** ) | |
| ) | |
| **Defendant** ) | |
| _____ ) | April 6, 2004 |

**MEMORAMDUM IN SUPPORT OF MOTION IN LIMINE TO DETERMINE**

**EFFICACY OF TRIAL SUBPOENAS**

"Service [of a Rule 45 Subpoena] on an agent of a corporation is sufficient … the agent in that situation in merely the vehicle for reaching the corporation.  Wright & Miller on Federal Procedure, Section 2454 (Rule 45), citing *In re Electric & Musical Indus., Ltd., Middlesex, England*, D.C.N.Y. 1957, 155 F.Supp. 892 ("Service of a subpoena upon a corporation could be secured by delivering a copy of the subpoena to an officer or a managing or general agent of the corporation, and that agent could be an individual, a partnership, or another corporation.")

The plaintiff served a subpoena ($40 witness fee and $38 travel stipend) upon Fleet Credit Card Services L.P. (FCCS) and Experian, by and through its designated agent for service: CT Corporation System (at Providence and Hartford, respectively).  The foregoing authority suggests that the foregoing subpoenas should be effective, notwithstanding the fact that FCCS

1

and Experian have their *principal* places of business beyond 100 miles.[1]  On this date, plaintiff's counsel discovered Experian has office locations in Albany NY and New York NY (both of which are within 100 miles).[2]  A copy of the Experian subpoena (served on CT Corporation System) has on this date been forwarded to Experian at its Albany office.

      Neither Experian nor FCCS concede our understanding of Rule 45.

      Experian further argues that a corporate defendant is not a "person" (as that word is traditionally understood at law) subject to a Rule 45 subpoena.  Theirs is a senseless construction offending public policy.  *First American Corp. v. Price Waterhouse LLP*, Docket Nos. 98-7500(L), 98-7529(XAP) (2nd Cir. 1998) (Second Circuit upholds Rule 45 subpoena directed to a corporation *as* a corporation).

      A cloud of uncertainty looms.

      Wherefore the plaintiff prays for guidance.


Respectfully Submitted,

*[signature]*
_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC //* Shaw's Cove 5, Suite 202 // New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001 Tel: (860) 442-2265 // Fax: (860) 439-0295

---

[1] Note: FCCS is a Rhode Island Limited Partnership (discussed in Exhibit C); the registered FCCS general partner is located in Providence (Exhibit B).  The FCCS 30b6 representative (Scott Smaniotto) works at FCCS' principal place of business: Horsham PA.

[2] Exhibit A: Directory of East Coast Offices (Experian Corporate Website)

EXHIBIT A



EXHIBIT B

4



Corporations Database

# Rhode Island Corporation Search:

| | |
|---|---|
| Corporation Status: | Active |
| Look In: | Corporation Name |
| Search Terms: | |
| Search Type: | Show Records with ALL of the above terms.   *Click Here* for help with Boolean Searches |

[Submit]  [Reset]

## ID# 100790

### Fleet Credit Card Services, L.P.

**General Information**

**Status:** AC
**Charter:** DLP
**Chapter:** TITLE: 7-13-8
**State:** RHODE ISLAND
**Duration:**
**File Date:** 5 /26 /1998
**Effective Date:** N/A
**Last Report Date:** N/A

**Annual Report Image:**
2002 Image Not Available
2003 Image Not Available
2004 Image Not Available
**Help On Viewing Annual Reports**

**Sic Code:** 0--No SIC Code

**Authorized Shares:**

---

**Business Address**

N/A

**Name and Address of the Registered/Resident Agent**

CT CORPORATION SYSTEM
10 WEYBOSSET STREET
PROVIDENCE, RI02903 USA
Agent is active...Registered office is maintained

---

**Primary Officer/Director/Partner/Manager Information**

**Mailing Information**

**Title:** GENERAL PARTNER                N/A
FLEET CREDIT CARD HOLDINGS INC.
50 KENNEDY PLAZA
PROVIDENCE, RI02903, USA

**Event Information**

Activity

Mergers

| | |
|---|---|
| Corporations Division | Business Hours: |
| Office of the Secretary of State Matthew A. Brown | M-F 8:30 am to 4:30 pm |
| 100 North Main St. | Tel. (401) 222-3040 |
| First Floor | Fax. (401) 222-1309 |
| Providence, RI 02903 | Director: Sandra Williams |
| corporations@sec.state.ri.us | |
| www.sec.state.ri.us | |

EXHIBIT C

5

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.          **Filed August 13, 2003**          SUPERIOR COURT

| | |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, FLEET CREDIT CARD HOLDINGS, INC. and FLEET CREDIT CARD SERVICES, L.P., <br>                 Plaintiffs | : <br> : <br> : <br> : <br> : |
| V. | :    C.A. No.: PB 03-0220 |
| ADVANTA CORP.; ADVANTA NATIONAL BANK; ADVANTA SERVICE CORP. and COLORADO CREDIT CARD SERVICE, LLC, <br>                 Defendants | : <br> : <br> : <br> : |

**DECISION**

**SILVERSTEIN, J**.   This cause is before the Court for decision with respect to Defendants' Motion to Dismiss the First Amended Complaint for Declaratory Judgment filed by Plaintiffs FleetBoston Financial Corp, Fleet Credit Card Holdings, Inc. and Fleet Credit Card Services L.P. (hereinafter collectively "Fleet").  The action was brought against Defendants Advanta Corp, Advanta National Bank, Advanta Service Corp and Colorado Credit Card Services, LLC (hereinafter collectively "Advanta") under the provisions of Title 9, Chapter 30 of the General Laws of Rhode Island, 1956, the Uniform Declaratory Judgments Act,  (hereinafter either "the Act or UDJA").  The First Amended Complaint seeks judicial declarations that  1)  under the terms of § 6.41 of a certain Limited Partnership Agreement Advanta must indemnify Fleet from and against all damages for any taxes owed by Fleet (or any of its affiliates) as a result of taxable income recognized by Fleet (or any of its affiliates) due to assets contributed to Fleet Credit Card Services, L.P. as successor to Fleet Credit Card, LLC (not a party to this litigation)

(hereinafter singularly the "Partnership") by Advanta. The First Amended Complaint further seeks a judicial declaration under the terms of § 6.42 of the Limited Partnership Agreement that neither Advanta (nor any of its affiliates) is entitled to indemnification from Fleet for any damages for any taxes owed by reason of a violation by Fleet of certain designated portions of the Limited Partnership Agreement. While the First Amended Complaint addresses, in Counts I and II thereof, the judicial declarations referred to above, a Count III, which sought a further judicial declaration, now is moot.

## FACTS

Essentially, the facts giving rise to the case before the Court evolve out of the acquisition by Fleet, in 1998, of the consumer credit card business of Advanta. That acquisition was structured in the form of a limited partnership arrangement. Advanta contributed credit card receivables of close to $12 billion, and other assets, to the partnership in exchange for a partnership interest representing 1.3 percent of the Partnership. Fleet held the balance of 98.7 percent of the Partnership. In addition to receiving a small percentage of the Partnership as aforesaid, Advanta also benefited from the assumption by the Partnership of $500 million of Advanta liabilities in excess of the basis of the assets contributed by Advanta. It is alleged in the First Amended Complaint that Fleet agreed to this anticipated tax free partnership structuring as an accommodation to Advanta; however, with the benefit of a tax indemnification provision protecting Fleet from any adverse tax consequences resulting from Advanta's contribution of assets to the Partnership. Fleet also contributed substantial assets to the Partnership.

On its 1998 federal tax return, the Partnership reported to the Internal Revenue Service a bad debt deduction of over $800 million with respect to credit card receivables

2

that became uncollectible during 1998. In view of the pass through nature of a partnership tax return, that deduction, like all operating income and deductions of the Partnership, was allocated to the partners in proportion to their partnership interests. Thus, Fleet was allocated 98.7 percent of the bad debt deduction. It is alleged in the First Amended Complaint that without the knowledge of Fleet, Advanta took an inconsistent position on its corporate tax returns and claimed that it was entitled to deduct $508 million of the $800 million of bad debt losses. Advanta filed a Notice of Inconsistent Treatment (with the Internal Revenue Service) and claimed the last mentioned deduction without first notifying Fleet of its position and without, it is claimed, attempting to resolve the issue of entitlement pursuant to a dispute resolution provision found in § 10.1 of the Limited Partnership Agreement.

During calendar year 2001, the Internal Revenue Service audited both the Partnership and Advanta regarding the bad debt deduction. The Internal Revenue Service issued a so-called 60 day letter to the Partnership disallowing $508 million of the $800 million bad debt deductions reported on its 1998 tax return. Further, the Internal Revenue Service sent a comparable 30 day letter to Advanta disallowing the $508 million bad debt deduction taken by it on its corporate return. Essentially, the Internal Revenue Service disallowed both claimants so as to avoid being "whipsawed" by asserted inconsistent positions as to the same transaction. Further, during the last mentioned audit, the Internal Revenue Service also reviewed the Partnership's reporting of a taxable gain of $47.4 million as a result of the Partnership's sale of its portion in the so-called Royal Bank of Scotland Joint Venture. The Service proposed that this gain be allocated

to Advanta and, the Partnership, through Fleet, concurred in and consented to that determination.

Ultimate determination of the tax issues presently pends before the Internal Revenue Service Office of Appeals following appeals both by Fleet and by Advanta and likely will become the subject of a proceeding or proceedings before the Tax Court. Of course, the resolution of the tax issues is **not** the subject of the case pending before this Court. The instant suit arises out of a demand by the Partnership and Fleet for indemnification from Advanta under the provisions of the tax indemnification section of the Limited Partnership Agreement, referred to above, as well as a demand for indemnification by Advanta essentially under the provisions of a somewhat narrower indemnification section of the Limited Partnership Agreement that it is claimed is implicated due to the Internal Revenue Service treatment of the Royal Bank of Scotland Joint Venture sale and the Partnership's and Fleet's concurrence therewith. The Court further notes that other disputes have arisen between the parties hereto arising out of the Limited Partnership Agreement and have been subject to litigation in the Delaware Court of Chancery for New Castle County.

In connection with its determination and decision in this matter, the Court has had the benefit of substantial oral argument supplemented by voluminous briefing. Simplistically, and perhaps overly simplistically, the contentions of the parties on this Motion to Dismiss are as follows: Advanta asserts that the matter presently is not ripe, that there is no justiciable issue and there is no real case and controversy until such time as a final determination has been made with respect to the underlying tax issues. Put another way, Advanta asserts that this Court is asked for an advisory opinion and that

under the constitutional and case law of this jurisdiction, see Berberian v. Travisano, 332 A.2d 121, 124 (R.I. 1975), advisory opinions fall only within the jurisdiction of our Supreme Court and, of course, only under limited circumstances. Fleet on the other hand, in contradistinction to Advanta, claims there is a real case and controversy, that the matter is ripe for declaratory judgment, that the provisions of the UDJA specifically provide for relief under the circumstances herein alleged and that the relief sought does not constitute an advisory opinion but represents the resolution of a real and present justiciable conflict between the parties.

Determination of the issue presented must start with a review of the provisions of the Uniform Declaratory Judgments Act as found in Title 9, Chapter 30, Section 1 *et seq*. of the General Laws of Rhode Island 1956, 1997 Reenactment, where the scope of the Act is stated to be

> "**Scope.** – The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

There is, of course, no question but that the Superior Court is vested with jurisdiction to declare rights, status and other legal relations. The Court notes that Advanta's original Motion herein, while styled a motion to dismiss, fails to indicate the subsection of our Superior Court Rule of Civil Procedure 12(b) under which it is brought. The memoranda and/or briefing provided to the Court points out that the Motion possibly is brought pursuant to Rule 12(b)(1) which, of course, would call into question the subject matter jurisdiction of this Court. Clearly, the statute above set out precludes a successful

12(b)(1) motion.  While subject matter jurisdiction would be invoked to challenge a request for an advisory opinion, this Court reads the instant complaint as seeking Declaratory not Advisory Relief.  A quick analysis of the balance of Rule 12(b) convinces this Court that the subsection under which Advanta moves is 12(b)(6).  Essentially asserting that the Amended Complaint fails to state a claim upon which relief can be granted, with heavy reliance on the case of Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) wherein it is stated that declaratory judgment is available only when the action presents "an actual justiciable controversy," Advanta argues that a long history of cases from this jurisdiction implicating the UDJA discloses that there is no "no actually justiciable controversy" when the claim thereunder is unripe and abstract because it involves facts that might or might not occur in the future.  Put differently "any petition which is based on facts and circumstances which may or may not arise at a future date is of necessity unripe and abstract."  Berberian v. Travisano, 332 A.2d 121, 124 (R.I. 1975).  Other cases cited by Defendants consistently hold that a party seeking declaratory relief must establish an actual controversy.

      Section 3 of the Rhode Island version of the Uniform Declaratory Judgments Act consists of a single sentence which reads "A contract may be construed either before or after there has been a breach thereof."  Research discloses no case from our court construing or interpreting this section although it has been cited on several occasions.  One wonders as to the meaning of "controversy" in "case and controversy" when applied to the construction of a contract pre-breach which clearly may be interpreted and construed and results declared pursuant to the provisions of Section 3.  In any event, in the case at bar, the Court notes that on December 19, 2002 the Partnership — Fleet

6

demanded indemnification from Advanta pursuant to the provisions of the tax indemnification section of the Limited Partnership Agreement. A controversy real in nature thus occurred on or about January 7, 2003 when Advanta rejected the indemnification request and was solidified on January 8, 2003 when Advanta demanded indemnification together with a right under the Limited Partnership Agreement to represent the Partnership in the proceedings before the Internal Revenue Service.[1] Fleet's response to the January 8, 2003 letter from Advanta came on January 13, 2003 when it filed the original Complaint in this matter with this Court.

The issue for determination and the issue upon which Advanta's Motion to Dismiss succeeds or fails is whether, under the facts and the contentions set forth above and under the state of the law in this jurisdiction, there is a justiciable case and controversy presently existing between the parties or must a determination of the rights, if any, to indemnification await a final determination by the Internal Revenue Service or by some court, tax court or otherwise, of competent jurisdiction with respect to the tax positions of the parties under the provisions of the Internal Revenue Code?

## DISCUSSION

There is no real disagreement among the parties that if a determination of the right to contract indemnification must await final resolution of the tax controversy among them and the Internal Revenue Service by administrative or judicial means, that such resolution is many years away. Fleet, however, strongly urges this Court to permit this action to proceed and notes, *inter alia*, that under Section 2 of the UDJA it as a ". . . person interested under a . . . written contract . . . or whose rights . . . or other legal relations are

---

[1] The demand to represent the Partnership in those proceedings was withdrawn by Advanta by letter dated February 24, 2003. That withdrawal mooted Count III in the First Amended Complaint herein.

7

affected by a . . . contract . . . may have determined any question of construction . . . arising under the contract . . . and obtain a declaration of rights . . . or other legal relations thereof." Further, Fleet reminds this Court that Section 3 of the UDJA, quoted above, specifically authorizes judicial construction of a contract either before or after the occurrence of a breach thereof. Fleet underscores the provisions of Section 5 of the Act for its position that a judgment on its complaint declaring the rights of the parties will remove an uncertainty as to the rights of indemnity and inevitably the effect thereof will be early termination of the controversy among the parties. To support this contention Fleet relies on a practical exercise in economics which suggests the likely or, indeed, inevitable event, says Fleet, that an additional cost to Advanta of waiting the many years referred to at the inception of this section would be millions of dollars because of the "gross up" provision found at § 6.43 of the Limited Partnership Agreement.[2]

Fleet argues to this Court the proposition that the instant Motion by Advanta, a Motion to Dismiss under the provisions of 12(b)(6), is subject to a high standard. That is to say, this Motion should be denied, with the result that the case should continue ". . . unless it is clear beyond a reasonable doubt that the plaintiff(s) is not entitled to relief no matter what set of facts might be proved in support of the claim." <u>Redmond v. Rhode Island Hospital</u> <u>Trust Nat'l Bank</u>, 386 A.2d 1090, 1092 (R.I. 1978). Also, to be taken into account in considering this Motion to Dismiss is the mandate of the Legislature dictating that the Act is remedial and providing that it ". . . is to be liberally construed and administered." General Laws § 9-30-12.

---

[2] <u>See</u> example at page 24 of the Plaintiffs' Memorandum of Law in Support of Their Objection to Defendants' Motion to Dismiss dated March 21, 2003.

Advanta relies upon a number of cases in support of its position which essentially precludes a determination of indemnification until the underlying liability of the parties claiming the right to indemnification has been established.  Fleet counters this argument by indicating that the Internal Revenue Service's 60 day letter established Fleet's liability and, but for Fleets appeal of that letter and its findings to the Office of Appeals, would have required Fleet actually to have paid the taxes due as a result of the Internal Revenue Service's determination.  Fleet also argues that under the definition of damages set forth in the tax indemnification portion of the Limited Partnership Agreement at § 6.2 it presently is entitled to indemnification for costs and expenses, including reasonable legal fees, which it already has incurred in connection with this matter.  Further, Fleet points to the existence of a real dispute between it and Advanta over the meaning of the indemnification provisions as creating a justiciable issue and a real case and controversy between them.

## **CONCLUSION**

This Court notes that our Supreme Court has held that an expedious and fair method by which a party can secure an advance determination as to its contractual duty to defend or to indemnify is through a declaratory judgment proceeding.  Fireman's Fund Insurance Co. v. E. W. Burman, Inc., 391 A.2d 99, 101 (R.I. 1978).  This Court sees no significant difference between the position of a moving party seeking a determination of its duty to indemnify from that of plaintiffs here seeking a determination as to their right to be indemnified.  Earlier our court had held a controversy to be justiciable under the Act so long as plaintiff(s) present sufficient facts giving rise to some conceivable legal hypothesis which will entitle plaintiff to some relief against defendant(s).  Millette v.

9

Hoisting Engineers' Licensing Division, 377 A.2d 229, 234 (R.I. 1977).  Finally, at this juncture, Fleet contends that a resolution of the underlying tax issues pending before the Internal Revenue Service will quantify the basic amount of the indemnification but that there already exists the factual predicate upon which indemnification may be ordered.  Under such circumstances, clearly here there exists a case and controversy and a justiciable dispute between the parties such that the Motion to Dismiss under 12(b)(6) should be and hereby is denied.  This ruling, of course, does not constitute a determination on the merits of the issues before the Court nor should it be taken as a exercise (one way or the other) of the Court's power pursuant to Section 6 of the Act to refuse to render or enter a declaratory judgment or decree which would not determine the uncertainty or controversy giving rise to this proceeding.

      Counsel for the prevailing parties is directed to prepare an appropriate order consistent with this decision to be settled upon notice to counsel for Advanta.

## Zenas Zelotes LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

Jones, Day, Reavis & Pogue
Attn: Arun Chandra
222 East 41st Street
New York, NY 10017-6702        4/6/04

## Zenas Zelotes LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Clerk of Court
450 Main Street
Hartford CT 06103              4/6/04

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a copy of the document(s) attached was served upon each addressee by USPS first class mail on the date(s) reflected.

4/6/2004

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC*
Shaw's Cove 5, Suite 202
New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001
Tel: (860) 442-2265 // Fax: (860) 439-0295

## Zenas Zelotes LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Chambers (Chatigny J.) (C. Copy)
450 Main Street
Hartford CT 06103              4/6/04