## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| LEWIS C. BROWN | ) |
| | ) |
| **Plaintiff** | ) |
| **vs.** | )  **Case No. 3:01CV1967 (RNC)** |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS INC. | ) |
| | ) |
| **Defendant** | ) |
| | ) |
| _____ | )  **April 30, 2004** |

## MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS

A.     <u>A SUCCESSFUL FCRA PLAINTIFF IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS</u>

On April 16, 2004, a plaintiff's judgment entered pursuant to the Fair Credit Reporting

Act (FCRA), 15 U.S.C. § 1681, and the Connecticut Unfair Trade Practices Act (CUTPA),

C.G.S. § 42-110a *et seq.*

The FCRA is a consumer protection statute "… prompted by 'congressional concern over

abuses in the credit reporting industry.  In the FCRA, Congress has recognized the crucial role

that consumer reporting agencies play in collecting and transmitting consumer credit

information, and the detrimental effects inaccurate information can visit upon both the individual

consumer and the nation's economy as a whole."  *See, Cushman v. Trans Union Corp.*, 115 F.3d

220, 223 (3rd Cir. 1997) (quoting *Philbin v. Trans Union Corp.,* 101 F.3d 957, 962 (3rd Cir. 1996)).  *See also, St. Paul Guardian Insurance Company v. Johnson,* 884 F.2d 881, 883 (5th Cir. 1989); *Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) ("consumer oriented objectives" require liberal construction of the statute).

Because of the remedial nature of the statute, the FCRA expressly mandates awards of attorney's fees to successful plaintiffs in actions to enforce any of its provisions.

*See*:     15 U.S.C. § 1681o(a)(2).[1]

*Also*:   Federal Appellate courts [to include the U.S. Supreme Court] consistently cite to *identical* fee-shifting language found elsewhere in the (umbrella) Consumer Credit Protection Act (CCPA)[2], 15 U.S.C. §§ 1601-1693, (of which the FCRA is a part) as imposing a *mandatory* fee award.

---

[1] Section 1681*o* provides in pertinent part (emphasis added):

**(a)**    Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer **is** liable to that consumer in an amount equal to the sum of –

> (1) any actual damages sustained by the consumer as a result of the failure;

> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

[2] The Consumer Credit Protection Act (CCPA), 15 U.S.C. §§ 1601-1693, encompasses the Truth in Lending Act, Fair Credit Billing Act, Consumer Leasing Act, Federal Garnishment Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, Electronic Funds Transfer Act and the Equal Credit Opportunity Act.

e.g.    The Supreme Court cites identical[3] CCPA fee-shifting language in the Truth and Lending Act (TILA), 15 U.S.C. § 1640, as an example of a provision imposing mandatory fees. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n.5 (1978) *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 261 n. 34 (1975) ("statutes which are mandatory in terms of awarding attorney's fees include … the Truth in Lending Act, 15 U.S.C. § 1640(a) …").

e.g.    The Second and Seventh Circuits construe identical[4] CCPA fee-shifting language in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA). See: *Emmanuel v. American Credit Exchange*, 870 F.2d 805 (2d. Cir. 1989);. *Also*: *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) ("The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.").

---

[3] The Truth in Lending Act (TILA), 15 U.S.C. § 1640(a), provides (in pertinent part):

"… [A]ny creditor who fails to comply with any requirement imposed by … this subchapter with respect to any person is liable to such person in an amount equal to the sum of – (1) any actual damage sustained by such person as a result of such failure; … (3) in the case of any successful action to enforce the foregoing liability … the costs of the action, together with a reasonable attorney's fee as determined by the court."

[4] The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692(k), provides (in pertinent part):

"… [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of – (1) any actual damage sustained by such person as a result of such failure; … (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

Although counsel is unaware of an FCRA case squarely on point, both the statute's black letter ("is") and traditional cannons of statutory construction logically recommend a coherent reading of the FCRA consistent with that of the identical fee-shifting language appearing elsewhere in the CCPA (discussed: *supra*).[5]

Statutes which authorize a fee award for successful litigants are designed to promote access to judicial relief to those who would otherwise be unable to afford it by providing an economic fee incentive for lawyers to represent their interests. *See e.g., Pennsylvania v. Delaware Valley Citizens Counsil for Clean Air*, 478 U.S. 546 , 92 L.Ed. 2d 439, 106 S.Ct. 3088 (1986). "In addition, statutory fee awards serve to deter potential violators and encourage voluntary enforcement with the statute involved." *City of Riverside v. Rivera*, 477 U.S. 561, 91 L.Ed. 2d 466, 106 S.Ct. 2686. A court must award attorney's fees to a prevailing plaintiff sufficient to vindicate the Congressional goal of creating a system of private attorneys general to aid in the effective enforcement of the FCRA. *Bryant v. TRW Inc.,* 689 F.2d 72, 79 ("We have no doubt that Congress intended in authorizing attorney's fees in lawsuits under the FCRA, 15 U.S.C. §§ 1681n, 1681*o*, to make use of the private attorney general concept.").

---

[5] *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Fahy* v. *Fahy*, 227 Conn. 505, 513-14 (1993) ("Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [so] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law - both common and statutory - remains coherent and consistent."); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (courts must endeavor to interpret statutes as part of a symmetrical and coherent regulatory scheme)

This motion having timely filed,[6] and the plaintiff having prevailed,[7] the plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## C.  THE REQUESTED AMOUNT OF ATTORNEY'S FEES IS REASONABLE

The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying the number of hours reasonably expended on the litigation … by a reasonable hourly rate. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) (citation omitted).   Reasonable attorney's fees also include reasonable out-of-pocket expenses ordinarily charged to clients. *Deleon* citing *LeBlanc-Stenberg v. Fletcher,* 143 F.3d 748, 763 (2d. cir. 1998).   If the plaintiff won substantial relief, and all of his claims involved a "common core of facts" or were based on "related legal theories" so that much of counsel's time was devoted generally to the litigation as whole, making it difficult to divide the hours expended by a claim by claim basis, there should be a fee award for all time reasonably expended.  *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) citing *LeBlanc-Stenberg v. Fletcher,* 143 F.3d 748, 763 (2d. cir. 1998)

The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience and reputation in the district. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) (citation omitted).  Although there is a strong presumption that the lodestar figure represents a reasonable fee, the lodestar may be adjusted on the basis of several factors, including the results

---

[6] This motion is timely filed in accord with the 14-day provision of Fed. R. Civ. P. § 54(d)(2)(B).

[7] See: *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (a party prevails "if they succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit.")

obtained. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) (citation omitted). Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) (citation omitted).

### 1.    THE RESULTS OBTAINED SECURED A SUBSTANTIAL PRIVATE AND PUBLIC BENEFIT

The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.) (citation omitted).

For his client's emotional distress, Mr. Zelotes secured a *substantial* award -- $50,000.00.

Of arguable equal import, and to the benefit of *all* persons, Mr. Zelotes' efforts spurred positive industry reform, changing the manner in which a national consumer reporting agency (Experian) communicates important remedial information to consumers with troubled credit reports.[8] This too, must be considered. As the 10th circuit observed, commenting on similar enforcement of consumer (odometer) laws:

> **"The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy …"** *Fleet Inv. Co. v. Rogers*, 620 F.2d 792 (10th Cir. 1982) (emphasis added)

The resulting public benefit cannot be properly understated. In enacting the FCRA, Congress made the following findings:

---

[8] At trial, Experian's expert witness (David Browne) expressly so testified.

"The banking system is *dependent* upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."  15 U.S.C. § 1681(a)(1) (Congressional Statement of Findings) (emphasis added)

"There is a need to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4) (Congressional Statement of Findings) (emphasis added)

As relates specifically to Mr. Brown, the $50,000.00 awarded far exceeds that which would have been realized had he accepted Experian's highest pretrial offer ($60,000.00 *inclusive of attorney's fees and costs*).

The public is better off as a result of this litigation and Mr. Brown is better off for having taken a verdict.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Deleon* citing *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983)

### 2.    A UNIQUE BODY OF LAW AND EXPERIAN'S THREATS MADE THIS CASE UNDESIRABLE

A second substantive lodestar guideline to be considered is the undesirability of the case.

These cases are generally not considered desirable, as evidenced by the relatively small number of attorneys who bring them.

*Comment*: A $50,000.00 FCRA award (although remarkable within the field) is a relative hill of beans compared to recoveries commonplace to counsel handling personal

injury cases.  Hence, it may come as little surprise, that this was the first FCRA jury trial litigated in the District of Connecticut since its enactment 34 years ago (March 5, 1970).  Few members of the trial bar are willing (desire) to develop the requisite familiarity necessary to litigate under a complex statute rarely occasioned (FCRA).

From Mr. Brown's perspective, Experian's antagonistic threats further exacerbated the undesirability of litigating this matter to its appropriate conclusion.  On several occasion (both on and off the court record), Experian emphatically impressed upon Mr. Brown (*in terrorem*) that Experian would aggressively prosecute its full litigation expense if Experian prevailed (or if Mr. Brown fell shy of its offer of judgment).  Mr. Brown (a retired patent attorney of sound financial standing) is not judgment proof.  In proceeding to trial (to secure just and reasonable compensation, exclusive of attorney's fees and costs), Mr. Brown accepted both *considerable and disproportionate* individual risk.[9]

Mr. Brown (and his "humble shepherd") walked through the figurative "valley."  This substantive lodestar guideline similarly urges full and appropriate compensation.

---

[9] Although strong argument may be had that Congressional intent to promote remedial enforcement of consumer protection statutes (limiting a defendant's fees and costs to instances of bad faith) trumps the general provisions of a Rule 68 offer of judgment (which does not so limit), a resolution of this conflict remains uncertain.  At a minimum, this uncertainty threatens the perceived risk incumbent to consumer litigation, which might reasonably create a conflict of interest between the consumer (in avoiding the defendant's costs) and the consumer's attorney (in securing a settlement figure adequate to recover the reasonable value of his accrued fees).  This potential conflict in interests (and the resulting incumbent pressures to protect the client) makes consumer litigation all the more undesirable.  In communicating its threats, Experian aggressively tried to exploit this legal uncertainty to its advantage.

3.    **LODESTAR ANALSYIS RECCOMENDS A MID-RANGE HOURLY**
      **RATE OF $225**

The hourly rate to be used in calculating the lodestar should reflect prevailing market rates for attorneys. *Accel International Corp. v. Renwick*, 2004 WL 513829 (D.Conn) (Chatigny, C.J.). When an attorney submits only his own affidavit to establish the prevailing rate for similar services, the court looks to previous fee awards. *Id.* In *Accel*, his honor considered prevailing market rates for attorneys in this district, finding (on March 8, 2004):

> "Based on the reported decisions, it appears that that hourly rates awarded in this district have not exceeded $275 for highly experienced attorneys, [FN2] or $175 for associates. [FN3] On this record then, those are the rates that will be used. [FN4]"

The mid-level hourly fee requested ($225) is consistent with (and well below) the regularly rates hourly billed by fellow equity counsel handling consumer cases within the district.

> *e.g.*    Bernard Kennedy, $325/hr; Michael Kennedy, $325/hr; Joanne Faulkner, $300/hr: Daniel Blinn (equity counsel: Consumer Law Group), $300/hr.; *compare*: Matthew Theriault (*C.L.G. associate attorney*) $175/hr. and Sharon Sinkoski: (*C.L.G. paralegal*: $110/hour).

The mid-level hourly fee requested ($225) also falls *dramatically* below that assessed by Experian's defense counsel.

> *e.g.*    On information and belief: George Kostolampros, $300/hr. (*associate attorney*) Arun Chandra, $300/hr. (*associate attorney*): Daniel McLoon, $400+/hr.

*Note*:    Opposing counsel's fees and costs are factors long used by courts to determine the reasonableness of requested fees and costs. *See*: *Taylor v. Scarborough,* 66 F.2d. 589, 591 (2nd Cir. 1933); *also*: *Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan*, 718 F.2d 515, 523 (2d Cir. 1983) (In awarding fees, the Court can consider the substantial effort of plaintiff's attorney caused by defendants' "counsel who fought the case bitterly to the very end and even now continue their recalcitrant posture."); *also*: *Blowers v. Lawyers Co. Op. Publishing Co.,* 526 F.Supp. 1324, 1327 (W.D.N.Y. 1981) (effort spent defending a case is probative of the plaintiff's counsel's efforts to become a prevailing party.); *also*: *Mitroff v. Xomox Corp.*, 631 F.Supp. 25, 28 (S.D. Ohio 1985), *rem'd* 797 F.2d 271 (6th Cir. 1986) (when determining attorney's fees under federal fee shifting statutes, defense counsel's own hourly rate and time expended are among the factors which should be considered in assessing the reasonableness of a plaintiff's fee request); *also*: *Brinkman v. Gilligan,* 557 F.Supp. 610 (S.D. Ohio 1982), *aff'd* 797 F2d 163 (6th Cir. 1983) (pertinent to any consideration of a reasonable amount of time expended in the prosecution of a lawsuit is the amount of time expended by the defendant in defending that lawsuit); Thus, should the defendant argue that the plaintiff's efforts in prosecuting this action are unreasonable, the plaintiff (and this Court) should examine the effort and fees charged by defense counsel as a gauge to the reasonableness of the fee requested.

*Also*:    Although this court may consider Mr. Zelotes' previous fee awards[10] … if lodestar analysis reasonably recommends a higher rate, the court should award the higher rate. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)(fee award under §

---

[10] Mr. Zelotes only once before requested a fee award.  In *Gervais v. O'Connell, Harris & Associates Inc*., 3:02CV1273(MRK)  (12/29/03: default hearing in damages); Mr. Zelotes *specifically requested*, and this court (Kravitz, J.) awarded  ($200/hr.).  Mr. Zelotes contends (infra) that lodestar analysis in present instance, and the results in particular, fairly warrant a slightly higher rate ($225/hr.).

1988 is not limited by a contingent fee agreement between the attorney and his client. "Should a fee agreement provide less than a reasonable fee calculated [according to the lodestar method], the defendant should nevertheless be required to pay the higher amount."); *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 148 (2d Cir. 2001)(allowing a higher rate than that actually billed in a Copyright Act case); *also*: *Venegas v. Mitchell*, 495 U.S. 82 (1990), 495 U.S. at 88 (in a case concerning attorneys' fees under the Fair Labor Standards Act ("FLSA"), the Supreme Court held: "[W]here Congress has authorized the recovery of fees, the [district] court [should] be cognizant that the result achieved is necessarily more than mere financial gain.  The recovery of attorney fees is a tool utilized by Congress to encourage the vindication of congressionally identified policies and rights, as well as to enable the plaintiff to obtain damages without expense for legal assistance . . . . [T]he determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel … Moreover, the [FLSA] imposes on the errant [defendant] the burden of financing plaintiff's case to the extent of court costs and a judicially determined reasonable rate of pay for plaintiff's counsel. The fact that [plaintiff] has entered into an agreement with the lawyers prosecuting the case does not impact on the statutory burden of the [defendant], as the latter must pay what the district court determines to be a reasonable rate. The existence of a contingency contract may be considered by a district court as an element to be considered in determining the market value of an attorney's services, but the court is not bound in any sense by that agreement. . . . The court therefore concludes that a[n FLSA] fee award should not be limited by a contingent fee agreement . . . .")

Mr. Zelotes' performance over the course of this litigation evidenced a confidence, ability and training well advanced beyond that reasonably expected of counsel with similar "calendar

year" experience.[11]  Mr. Zelotes' talent for legal argument is commensurate with his academic

credentials,[12] and the clarity of his writing evidences his preceding career (experience) as a

---

[11] Although this lodestar guideline is coined as "the experience, reputation and ability of the attorney," in truth, experience and reputation are reasonably valued only insofar as they are circumstantial barometers of ability; experience (arguably) enhances ability and reputation is circumstantially probative.

To infer that Mr. Zelotes' "experience" is defined by the calendar years separating present date (2004) from his law school graduation (2000) is mistake.  Experience is *quantitative*, *qualitative and relative*.

> *Consider*: Traditional (lay) notions of "experience" presume that two attorneys, having practiced law for similar duration, are "equally" experienced.  This quantitative assumption *presumes* qualitative equality.
>
> Yet it can be reasonably argued that an attorney who achieves accelerated professional development over four years (through continuing education, intense study and evolving challenges) enjoys the greater benefit of experience than an attorney with 20 years "calendar experience" who learns his trade in a single year, finding comfort in routine thereafter.  By scholarship and study, abilities typically borne of experience … might sooner be imparted (experience might even be a *detriment* if poor performance, through repetition, becomes habit).  Experience is qualitative.
>
> Experience is "relative" insofar as it is a coin of art incapable of precise, uniform definition.  What precisely does a meaningful year's experience as an attorney entail? It is a question incapable of answer.  And what of experience beyond the profession?  If an attorney's preceding career as a journalist elevates the clarity and presentation of legal argument … is his "experience" as a journalist properly credited and considered as an attorney?   If preceding studies in political

journalist.[13]  As an equity attorney, his day-to-day responsibilities extend well beyond tasks typical of associate counsel.[14]  The quality of his performance, breadth of responsibilities and fiscal risks assumed (as equity counsel) are more fairly akin to that of a junior partner than an associate.[15]

---

philosophy and legal theory enhance counsel's ability to argue for the modification, extension or repeal of existing law … is that "experience" also properly credited and considered?  Experience is both relative and fluid.

However "experience" is ascertained … at best, it is circumstantial evidence of the underlying benchmark measured -- ability.

[12] Mr. Zelotes' is a distinguished honor graduate of University of Iowa College of Law (one of the nation's top ranked public law schools).  His academic achievements are on (objective) equal footing with his typical large-firm counterparts.

[13] Good writing aims to be clear, concise, compelling, complete, easy on the eye, mindful of tense and sentence structure -- beauty in simplicity.

[14] As an "equity attorney," Mr. Zelotes' regular responsibilities encompass the *entire* spectrum of all litigation and transactional matters handled, business management, acquisitions, financial planning, marketing and taxation.

[15] As relates to Mr. Zelotes' sister field of litigation (debt collection) his client recoveries and attendant reputation are remarkable. *e.g.* In January 2004, Mr. Zelotes successfully brokered an end to one the longest and costliest debt collection cases in state history, *First Constitution Bank v. Caldrello*, CV-89-0125327-S (and related cases) (15 years at a cost of approximately one-half million dollars).   By skilful negotiation coupled with intense advocacy [over a ten-month period], Mr. Zelotes safeguarded a charitable trust of beachfront property from averred claims of

To properly prepare and explore his case, Mr. Zelotes had to decipher Experian's coded computer database records, and thereafter articulate how a (multi-billion-dollar) corporation's automated procedures were in negligent or willful noncompliance with the FCRA (and without benefit of a friendly expert, to boot) – no small task.  If such matters were easily litigated, local counsel might reasonably have defended.  This (in part) explains why Experian retained and flew in (from Los Angeles) senior litigation counsel from one of the nation's largest law firms (Daniel McLoon).[16]

In assessing the reasonableness of the cumulative award, this court might also consider awards in other fee-shifting cases:

> e.g.    *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement);

> e.g.    *Jorgenson v. Experian*, (D. Ore. No. 96-286-JE) (court awarded $200,000.00 in fees and costs.  Experian settled on appeal for confidential amount).

> e.g.    *City of Riverside v. Rivera,* 477 U.S. 561, 580 (1986) (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation)

> e.g.    *United States Football League  v. National Football League*, 887 F.2d 408, 413 15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery);

---

fraudulent transfer (CV-03-0126670-S) and eliminated more than *four million dollars* in consumer debt.

[16] The plaintiff's success in sustaining a prima facie case for willfulness (punitive damages) assuredly also factored (as likely did the apparent tenacity, ability and confidence of plaintiff's untested advocate).

e.g.    *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1057 60 (2d
        Cir.1989) ($415,000 fee for recovering $2,689.02 monthly pension).

e.g.    *Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536 (E.D. Pa. 1996): (FCRA; *No
        damages*; attorney fees and costs: $87,821.48.)

e.g.    *Norton v.Wilshire Credit Corp*., 36 F. Supp. 2d at 220 (D. N.J. 1990) (rejecting
        proportionality in awarding $58,000 in fees in an FDCPA case)[17]

In this case, plaintiff's counsel has expended 596.3 hours on this matter (ten 60-hour
weeks).  *See*: Affidavit.  At first glance, the time and labor involved in litigating this case may seem
quite substantial.  However, the instant litigation has been a hard-fought battle that has spanned
more than two and a half years, culminating in a three-day jury trial that produced an excellent
verdict, in the plaintiff's favor, and a substantial benefit to both private and public interests alike.

As the Sixth Circuit observed:

> The purpose of [the statutory fee provision] is to encourage lawyers to accept
> [those] cases in which damages may be small, nominal or nonexistent … **Greatly
> reduced fees, such as were awarded in this case, will discourage lawyers from
> accepting [such] cases and vindicating the rights Congress had in mind.**
> *Bryant, supra,* 689 F.2d at 80 (quoting *Kinney v. Rothchild*, 678 F.2d 658, 660 (6th
> Cir. 1982))[18]  (emphasis added)

---

[17] The Second Circuit rejects the "proportionality" argument as the basis for a fee award.
*e.g*., *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *DiFilippo v. Morizio*, 759 F.2d
231, 234 (2d Cir. 1985); *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir. 1983). As evidenced,
fee awards in civil rights and consumer protection matters *regularly* exceed a plaintiff's recovery.

[18] The United States Supreme Court has stated that the standards used for the Civil Rights
Attorney's Fees Awards Act "are generally applicable in all cases in which Congress has
authorized an award of attorney's fees to a 'prevailing party.'"  See, Hensley, supra, 461 U.S.
433, n. 7.  The FCRA is no exception and so, FCRA cases will calculate attorney fee awards

Given the difficulty and complexity of the factual issues involved, and the substantial commitment necessary to advocate the plaintiff's interests against such a determined, well-heeled corporate defendant, it should be obvious that counsel for the plaintiff had to be highly skilled and prepared. Certainly, defense counsel spared no resource, effort or commitment in their attempt to resolve this matter in favor of the defendant. Mr. Zelotes' tenacity, methodology, attention to detail, and prudent caution avoided the numerous pitfalls, traps and obstacles skillfully erected by the defendant, enabling the plaintiff to prevail.

6.    **THE ACCEPTANCE OF THIS CASE PRECLUDED OTHER**

**EMPLOYMENT BY PLAINTIFF'S COUNSEL**

This Court should also consider whether or not this representation reasonably precluded other economic opportunity. Clearly, plaintiff's counsel has devoted significant time and effort on the plaintiff's behalf, particularly while resisting summary judgment and in the proximate months abutting trial. This periodically necessitated that he close his doors to new business or otherwise refrain from successful patterns of advertising (e.g. bankruptcy). If this litigation had been unsuccessful, a substantial amount of attorney time and effort would have resulted in no compensation at all.

Which raises another issue: Mr. Zelotes (a highly qualified and talented young trial lawyer) in all likelihood could have (more comfortably) pursued a well-paid career at large regional law firm upon (or shortly after) admission. Instead, Mr. Zelotes bet on his own talents as an advocate and businessman to build what is now a successful, self-sustaining litigation

---

using the same standards as Civil Rights, Truth in Lending, Anti-trust, RICO and other federal fee-shifting statutes.

practice. His interim personal sacrifice[19] made possible the substantial benefit presently conferred upon Mr. Brown and the vindication of important public policy. In building a successful contingent litigation practice, he patiently persisted through the building stages (everything going out and little coming in) and did not allow the temptations of quick settlement cloud his loyalties to client. Mr. Zelotes should be appropriately rewarded.

### C.    THE PLAINTIFF IS ENTITLED TO REASONABLE COMPENSATION FOR ALL AVERRED CLAIMS

If an attorney is not successful in prosecuting each claim asserted, a court must decide whether an attorney's time spent on the plaintiff's unsuccessful claims should be included in the fee calculation. *DeLeon v. Little*, 2000 WL 435494 (D. Conn) (Chatigny, C. J.).

As a preliminary matter, the plaintiff is not convinced the foregoing scrutiny applies. The plaintiff sought redress under the FCRA and CUTPA. The plaintiff recovered under the FCRA and CUTPA. It would appear then that the plaintiff succeeded on each *claim* averred (notwithstanding that he did not prevail on each underlying FCRA *theory of liability* averred).

If the court determines the foregoing scrutiny applies, a two-step analysis is required. *Id*. Step one asks whether the unsuccessful claims were related to the successful claim in law of fact. If the answer is yes, step two asks whether the plaintiff achieved a level of success that warrants full

---

[19] It is clear that "an appropriate adjustment for delay in payment - whether by the application of current rather than historic hourly rates or otherwise" is consistent with the goals of fee-shifting statutes. *Wilkinson v. Forst*, 729 F.Supp.2d 1416 (D.Conn. 1990) citing *Missouri v. Jenkins, by Agyei*, ___U.S.___, 109 S.Ct. 2463, 2471-72, 105 L.Ed.2d 229 (1989); *Chambless v. Masters, Mates, and Pilots Pension Plan,* 885 F.2d 1053, 1060 (2d Cir.1989)

compensation for the hours spent on the unsuccessful claims.  If the results obtained are "excellent," no reduction is warranted.  *Id.*

Clearly, to the extent the plaintiff's success was limited by degree of scienter established at trial (willful noncompliance versus negligent noncompliance), the claims are related in law and fact. Discovery investigating the degree of scienter associated with Experian's noncompliance necessarily entailed a detailed review of the same subject matter.   The first step is satisfied.

To the extent the plaintiff's success was limited by alternate theories of liability averred, the discovery requisite to each all but completely overlap.  The plaintiff averred that Experian was negligent: first, in failing to disclose the contents of the plaintiff's credit file upon request and, second: by failing to maintain reasonable procedures to assure the maximum possible accuracy of that (same) file.  Establishing negligent noncompliance under either theory entailed a detailed understanding and analysis of the defendant's internal records, procedures and file structure – even more so on his successful theory.  An underlying theme common to both theories is that, based upon circumstance and file content, the defendant should have reasonably identified and remedied its noncompliance.

In present instance, the jury awarded $50,000.00 for violations of both the FCRA and CUTPA.  It is of no consequence that the plaintiff did not prevail on every *theory* asserted, particularly as each relates to a common nucleus of operative fact.  *Bristol Tech. v. Microsoft Corp.*, 127 F.Supp.3d 64 (D.Conn. 2000) (" … [C]ourts in this circuit have followed Connecticut state court case law, including *Russell,* to hold that, where "there is no reasonable way to segregate counsel's time . . . by claim," the parties' claims were "interrelated," and "the time and money expended . . . were in the pursuit of one common goal," division of the fee based on a

plaintiff's success on one claim but failure on others is not appropriate."); *also*: *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (a party prevails "if they succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit"), A*lso Hensley* at 435-436 n. 11 (A reduction in the fee is not justified merely because "prevailing plaintiff did not receive all the relief requested.")[20]

The first step is satisfied.

The second step, as earlier mentioned, asks whether the plaintiff achieved a level of success that warrants full compensation for the hours spent on the unsuccessful claims.

If the results obtained are "excellent," no reduction is warranted. *Id.*

As earlier discussed (*supra*), for his client's emotional distress, Mr. Zelotes secured a *substantial* award -- $50,000.00. That the jury *conceivably* could have awarded more is of little import (the jury could *conceivably* have awarded less). Nor does Mr. Zelotes' lofty aspirations for punitive damages ("swinging for the fences") in any way change the nature of the award conferred – objectively speaking … the award is *excellent*.

Its *excellence* is further demonstrated by the plaintiff's successful vindication of an important national policy, spurring positive industry reform to the greater public benefit (supra).

The public is better off as a result of this litigation and Mr. Brown is better off for having taken a verdict. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Deleon* citing *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983)

---

[20] *Consider also*: *Dague v. City of Burlington*, 935 F.2d 1343, 1358 59 (2d Cir. 1991), reversed on other grounds, 505 U.S. 557, 112 S. Ct. 2638 (1992) (district court did not abuse its discretion in awarding full fee requested on all aspects of the case, although plaintiffs were unsuccessful on preliminary injunction and interlocutory appeal, some arguments failed, and some were not fee generating).

## CONCLUSION

Mr. Zelotes has vigorously advanced his client's interests for two-and-one-half years.

Because of the success achieved the plaintiffs are entitled to an award of reasonable attorney's fees and costs.  The plaintiff respectfully asks that this Court award: (1) attorney's fees in the amount of $137,167.50; and (2) litigation expense in the amount of $1,737.00

Respectfully Submitted,

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC //* Shaw's Cove 5, Suite 202 // New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001 Tel: (860) 442-2265 // Fax: (860) 439-0295

DECISIONS NOT REPORTED

Westlaw.

2000 WL 435494
(Cite as: 2000 WL 435494 (D.Conn.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Agnes DeLEON,
v.
Sandra E. LITTLE, et al.

No. 3:94CV902 RNC.

March 2, 2000.

RULING AND ORDER ON PLAINTIFF'S
RENEWED MOTION FOR AN AWARD OF
ATTORNEYS FEES
AND COSTS

**CHATIGNY.**

\*1 Plaintiff's renewed motion for an award of
attorneys fees and costs [doc. # 177] is granted in
part and denied in part.

I. Background

From late 1989 until mid 1992, plaintiff Agnes
DeLeon was employed by the City of Hartford as an
administrative assistant assigned to the City Council
office of the political party known as People for
Change ("PFC"). In that capacity, she served under
the direction of City Council members who had
been elected on the PFC slate, including Sandra
Little. On June 5, 1992, the plaintiff suffered a
nervous breakdown at work, was hospitalized, and
remained out of work for six months. Two years
later, she commenced this action against Little and
the City seeking money damages. [FN1] The
complaint alleged that for a period of approximately
two and a half years before the breakdown in June
1992, the plaintiff, who is Hispanic, was subjected
to continuous harassment and discrimination by
Little, who was African-American. The alleged
mistreatment, as summarized in the plaintiff's
complaint, included

FN1. Before bringing this action, plaintiff
pursued a workers' compensation claim
against the City.

orders to purchase illegal drugs under duress,
orders to perform personal errands for Defendant
Little, orders to perform tasks for Defendant
Little's private employer, orders to stand guard
while Defendant Little ingested illegal drugs,
repeated telephone calls to the Plaintiff at her
home during non-work hours, threats to terminate
the Plaintiff's employment as a result of her racial
and ethnic status and political affiliation,
implementation of discriminatory sick time
policies, monitoring of attendance at work, and
repeated degrading and humiliating criticisms of
the plaintiff in the presence of others.

Compl. at 8. The complaint alleged that "[a]s a
result of the cruel and abusive treatment and
harassment against her, the Plaintiff suffered a
severe psychiatric illness which required her
hospitalization and which has caused her to remain
under the care of a psychiatrist, including the use of
prescription medications, until the present time." *Id.*
at 5.

The complaint purported to state claims for relief
under 42 U.S.C. § 1982 on the ground that the
alleged mistreatment deprived the Plaintiff of her
rights to be free from emotional and criminal
harassment in the workplace, to be free from racial
discrimination in the workplace, and to be free from
interference to her personal liberties, all of these
rights secured by the First, Fifth, Ninth, and
Fourteenth Amendments of the United States
Constitution. *Id.* at 6. In addition, the complaint
included pendent state law claims for damages for
intentional infliction of emotional distress. See *id.* at
10-18.

In the first six months after the complaint was filed,
the parties engaged in some written discovery. In
February 1995, before deposition discovery began
in earnest, the parties agreed to try to settle the case
through alternative dispute resolution. The parties
subsequently prepared for and engaged in
mediation. Two mediation sessions were held in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1995, one in May, the other in September. The case did not settle.

*2 In January 1996, the litigation resumed. Over the next few months, depositions were taken of the plaintiff, Little, and eight witnesses. Then, in May 1996, the defendants moved for summary judgment on all counts of the complaint. The motions for summary judgment entailed extensive briefing by all parties, which was completed in the fall of 1996. In March 1997, Magistrate Judge Smith issued a ruling in which he recommended that Little's motion for summary judgment be granted as to all claims except a claim based on the First Amendment and that the City's motion for summary judgment be granted in full. In June 1997, the ruling was approved and adopted over the plaintiff's objection. *See DeLeon v. Little*, 981 F.Supp. 728 (D.Conn.1997) . [FN2]

> FN2. The plaintiff began to pursue an appeal but the appeal was withdrawn.

The case sat in that posture until the parties were ordered to appear for a pretrial conference in April 1998. By then Little had died. A motion to substitute her executor as the named defendant was subsequently filed and granted, and the case was set for trial.

Jury selection took place in October 1998. The trial lasted four days. At the trial, the plaintiff claimed that the defendant had violated her First Amendment rights in two ways: (1) by infringing on her right to freedom of association by prohibiting her from spending time during the business day in the office of the Democratic members of the City Council; and (2) by infringing on her right to political neutrality by impliedly threatening at a meeting at a Burger King restaurant that her job was in jeopardy because she was not attending meetings of the PFC. The plaintiff was not permitted to go to the jury on the first of these theories but was permitted to go to the jury on the second one. The jury found that Little's conduct at the Burger King meeting violated the plaintiff's First Amendment right to political neutrality. The jury awarded no compensatory damages for the violation, which occurred approximately eight months before the plaintiff's nervous breakdown. However, the jury did award nominal damages in the amount of $10

and punitive damages in the amount of $150,000.

The defendant filed post-trial motions for judgment as a matter of law and for a new trial or, in the alternative, remittitur. The plaintiff opposed those motions and filed a motion for an award of attorneys fees and costs. The plaintiff requested an award of $259,850 in fees based on 866.5 hours at $200 per hour plus a 50% bonus, and $17,589.55 in costs. The motion for judgment as a matter of law was denied, but the motion for remittitur was granted and a new trial was ordered unless the plaintiff accepted a reduced award of punitive damages in the amount of $7,500. See Rulings on Post-Trial Motions [doc. # 176] (filed Sept. 29, 1999).

Plaintiff has accepted the remittitur and renewed her motion for an award of attorneys fees and costs. In her renewed motion, plaintiff insists that she should receive a fully compensatory fee for all the time her attorneys spent on the case from its inception, plus a bonus for unusual success. In support of this position, she asserts that the Burger King meeting occurred as part of an "ongoing course of conduct during a thirty-month period"; that the defendant's conduct at the meeting was "intermingled" with her other conduct toward the plaintiff; that all the claims were "inherently interrelated"; and that she has won a "great victory." Pl.'s Mem.Supp. (Renewed) Mot. For Att'ys Fees & Costs [doc. # 178] at 2, 4 (unnumbered).

*3 Without waiving her claim to a fully compensatory fee and bonus, plaintiff also contends that, at a bare minimum, she should be awarded $144,549 in fees. This sum would compensate her for: (1) all hours her counsel spent on the case after June 1997 (i.e., after the rulings on the motions for summary judgment) (2) all hours Attorney C. Thomas Furniss spent on the case before June 1997 on the ground that all he ever worked on was the First Amendment claim; and (3) 25 percent of the hours spent by other attorneys on the case before June 1997 on the ground that this is the best estimate plaintiff's counsel can provide regarding the amount of time they spent on the First Amendment claim during that phase of the litigation. Plaintiff continues to maintain that $200 per hour is a reasonable rate for each of the hours for which she seeks compensation and renews her claim for costs in the amount of $17,589 .55.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Defendant does not deny that plaintiff is a prevailing party presumptively entitled to an award of reasonable attorneys fees. However, defendant urges the court to award significantly less than the plaintiff's reduced figure of $144,549. Defendant suggests that the most the court should award is $58,662.50, which it views as a "generous" figure for obtaining a recovery of $7,510 in nominal and punitive damages. Def.'s Opp'n to Renewed Mot. For Att'ys Fees & Costs [doc. # 180] at 4, 7. This sum is arrived at by: (1) compensating plaintiff for virtually all the hours spent on the case by her lead counsel, James M. Quinn, and Attorney Furniss after the summary judgment rulings; (2) compensating her for almost all the hours Attorney Furniss expended on the case before then; (3) reducing the hours spent by Attorney Quinn before the summary judgment rulings to 15% of their value (after excluding billing entries that on their face relate to matters other than the First Amendment claim against Little); (4) excluding all time spent by other lawyers on the plaintiff's team (i.e., all lawyers except James M. Quinn and C. Thomas Furniss); (5) compensating Attorney Quinn at a rate of $175 per hour; and (6) compensating Attorney Furniss at a rate of $150 per hour. Defendant opposes plaintiff's request for reimbursement of costs on the ground that she has failed to provide sufficient information regarding the nature or purpose of the costs to permit the court to make a reasonable award.

**II. Discussion**

The prevailing party in a federal civil rights case is entitled to an award of reasonable attorneys fees. See 42 U.S.C. § 1988. The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999). Reasonable attorneys fees also include reasonable out-of-pocket expenses ordinarily charged to clients. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998).

*4 To enable a court to calculate the lodestar amount, fee applications should be supported by contemporaneous time records specifying the date, hours expended, and nature of work done. *See*

*Hensley*, 461 U.S. at 437 & n. 12. Hours that are excessive, redundant, or otherwise unnecessary should be excluded. *See id.* at 434.

A prevailing party is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claim on which the party prevailed. *See id.* at 434-35. However, "if the plaintiff won substantial relief, and all of his claims for relief 'involve[d] a common core of facts' or were 'based on related legal theories,' so that '[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended." *LeBlanc-Sternberg*, 143 F.3d at 762 (quoting *Hensley*, 461 U.S. at 435). *See Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997).

The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience, and reputation in the district. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir.1997). When services are provided over many years, the objective of providing adequate compensation may call for use of current rather than historic hourly rates to compensate for delay in payment. *See Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998). There is a strong presumption that the lodestar figure represents a reasonable fee. See *Quaratino*, 166 F.3d at 425. However, the lodestar may be adjusted on the basis of several factors, including the "results obtained." *Id.* (quoting *Hensley* 461 U.S. at 434). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. When a plaintiff recovers less than all the relief sought but the relief obtained is nevertheless substantial, a fee award based on all hours reasonably expended may still be appropriate if the relief obtained justifies the expenditure of attorney time. *See id.* at n. 11. However, if a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 435494                                                    Page 4
(Cite as: 2000 WL 435494 (D.Conn.))

plaintiff recovers only minimal damages that fall well short of the relief sought, a reduction in the lodestar amount may be necessary and appropriate. *See Farrar,* 506 U.S. at 114; *Hensley,* 461 U.S. at 434; *see also Hyde v. Small,* 123 F.3d 583, 585 (7th Cir.1997) (Posner, C.J.) (district court must determine whether "the plaintiff was aiming high and fell far short, in the process inflicting heavy costs on his opponent and wasting the time of the court, or whether ... the case was simply a small claim and was tried accordingly") (citations omitted); *cf. Pino v. Locascio,* 101 F.3d 235, 237-38 (2d Cir.1996).

A. The Lodestar Calculation

1. Partial Success

\*5 The first issue that must be decided is whether the time spent on plaintiff's unsuccessful claims should be included in the fee calculation. Under *Hensley,* this requires a two-step analysis. Step one asks whether the unsuccessful claims were related to the successful claim in fact or law. If the answer is yes, step two asks whether the plaintiff achieved a level of success that warrants full compensation for the hours spent on the unsuccessful claims. If the results obtained are "excellent," no reduction is warranted. *Hensley,* 461 U.S. at 435. However, if the plaintiff obtained "only partial or limited success," a reduction may be necessary because the time expended might not be "reasonable in relation to the success achieved." *Id* at 436-37.

In *Hensley,* the Supreme Court recognized that "there is no certain method of determining when claims are related, or 'unrelated.' " *Id.* at 437 n 12. In this case, reasonable people could disagree about whether the claims should be deemed related under *Hensley.* All the claims in the complaint were at least marginally related because the First Amendment claim against Little based on the Burger King meeting could not be tried without some consideration of the history of the parties' relationship, which provided the factual underpinnings for the other claims. [FN3] Moreover, it is conceivable that some of the work on the unsuccessful claims contributed to the plaintiff's success on the First Amendment claim. [FN4] On the other hand, the successful First Amendment claim based on the Burger King meeting rested on a core of facts concerning the events of one evening, whereas the unsuccessful

claims rested on a slew of allegations concerning a course of conduct encompassing all the cruel and abusive treatment, harassment, and discrimination the plaintiff allegedly suffered throughout a period of thirty months. [FN5] Severing the unsuccessful claims from the case was therefore possible and subtracting them from the case would have substantially reduced the amount of time plaintiff's counsel needed to spend on the case before the rulings on the motions for summary judgment. [FN6]

> FN3 At the trial, plaintiff was allowed to introduce evidence that she suffered a nervous breakdown, that she was required to run personal errands for Little, that Little was abusive, and that Little was known to be mean and vindictive. This evidence was admitted to place the Burger King meeting in context and enable the jury to assess the plaintiff's credibility concerning her perception of what occurred at the meeting and the impact it had on her health.

> FN4. For example, it is conceivable that work on the unsuccessful Fourteenth Amendment claims against Little and the City might have contributed to the plaintiff's success in persuading the jury that the plaintiff reasonably perceived Little as having the power to transfer her to a dead-end job.

> FN5. The theory of the unsuccessful claims, as described by plaintiff's counsel in opposing summary judgment or those claims, was that Little had "conducted a well-orchestrated and relentless campaign to control and direct Plaintiff's professional life and to oppress and destroy Plaintiff's personal life. In this orchestration effort, Little had the cooperation--at least by virtue of their inaction--of colleagues on the City Council, of the City Clerk and of the Office of the Corporation Counsel, none of whom would act to protect Plaintiff's job, even when told of Little's orders to buy drugs. The campaign of terror finally achieved its goal, ousting

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

DeLeon from her job so that Little could replace her with a black employee. Her life, liberty and property interests were constantly assaulted, infringed on and partially stolen--never to be fully regained and Sandra Little got her way."
Pl.'s Resp. to Def. Little's Reply to Opp'n to Def. Little's Mot. for Summ.J. [Doc. # 78] at 7-8.

FN6. Plaintiff has not shown that the work her counsel performed to develop the successful First Amendment claim and the unsuccessful claims was so intertwined that the claims should be deemed related on that basis alone. Such a claim would be difficult to sustain in any event because the time sheets submitted by plaintiff's counsel show that before the rulings on the summary judgment motions (which is the only time period at issue here), Attorney Furniss had primary responsibility for the First Amendment claim and did not work on any other claims. This tends to confirm that the First Amendment claim could be pursued independently.

Assuming without deciding that all the claims in this case were sufficiently related to satisfy the *Hensley* standard of relatedness, 'FN7] the hours expended on the unsuccessful claims must be excluded at step two of the *Hensley* analysis because the plaintiff obtained only limited success. [FN8] Plaintiff's loss on the unsuccessful claims was not a minor defeat. The First Amendment claim against Little based on the Burger King meeting was clearly secondary to the other claims in the complaint, [FN9] which provided a vehicle for seeking compensatory damages for all the harms alleged in the complaint, plus punitive damages for Little's alleged cruelty, harassment, and discrimination. [FN10] Without those claims, plaintiff failed to obtain compensatory damages. [FN11] Moreover, because of the limited nature of the First Amendment violation found by the jury, the punitive damages awarded to the plaintiff had to be capped at $7,500 as a matter of law. [FN12]

FN7. In *Hensley*, the Court stated that in civil rights cases, "unrelated claims are

unlikely to arise with great frequency. *Hensley*, 461 U.S. at 435.

FN8. When the success achieved is limited compared to the relief sought, the court may either identify specific hours to be eliminated or simply reduce the award to make it reasonable in light of the limited nature of the relief obtained on the merits. *See Hensley*, 461 U.S. at 436-37.

FN9. The First Amendment claim based on the Burger King meeting is only alluded to in the complaint and only briefly discussed in the papers opposing the motions for summary judgment.

FN10. At the final pretrial conference on October 6, 1998, plaintiff's lead counsel stated that, as a result of the summary judgment rulings, the plaintiff felt she had been denied her day in court on "all the actions that led to her illness." Tr. of Pretrial Conference at 28.

FN11. The jurors were instructed that if they found a violation of the plaintiff's First Amendment rights based on the Burger King meeting, they could not award compensatory damages for the plaintiff's nervous breakdown in June 1992 because her psychiatric expert, Dr. Selig, could not attribute the breakdown to the Burger King meeting.

FN12. See Rulings on Post-Trial Motions [doc. # 176] at 16-19.

*6 I have no doubt that the modest relief plaintiff has obtained falls well short of the relief she sought to obtain in bringing the action, and that a fully compensatory fee award would be unreasonable in light of the limited nature of her success. The plaintiff can be adequately compensated in accordance with the law and policy of statutory fee awards by awarding a reasonable fee based on the hours her counsel devoted to the successful First

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 435494
**(Cite as: 2000 WL 435494 (D.Conn.))**

Page 6

Amendment claim.

**2. Hours For Work Done By Attorney James M. Quinn**

The next issue is the number of hours that should be included in the lodestar calculation for work done by plaintiff's lead counsel, James M. Quinn. It is undisputed that almost all the time he spent on the case after the rulings on the motions for summary judgment may be included. Based on independent review of each item in the billing records, this figure is 207.3 hours. [FN13]

> FN13. This figure excludes 4.75 hours for services rendered in connection with an "appeal" on June 26 and 29, 1998.

As noted earlier, the parties disagree regarding the number of hours that should be included in the lodestar calculation for work performed by Attorney Quinn before the summary judgment rulings. Plaintiff contends that she should be compensated for 25 percent of all the hours he spent on the case through that point in the litigation. The defendant, on the other hand, urges the court to compensate the plaintiff for 15 percent of those hours, after excluding certain billing entries that on their face appear to be unrelated to the First Amendment claim.

Plaintiff has not taken issue with defendant's argument that the billing entries listed at page 5 of defendant's memorandum in opposition should be excluded from the lodestar. After reviewing each of the billing entries on that list, it appears that the listed entries for the years 1992 through 1996 are unrelated to the First Amendment claim against Little. Accordingly, those hours are excluded. The number of hours excluded on this basis is 56.75, leaving a balance of 360.30 for the period through June 1997. [FN14]

> FN14. The defendant's list of challenged billing entries include three entries for 1998. Of these, the first two are properly excluded from the lodestar because they relate to an "appeal" and the last is properly excluded because, although the entry plainly relates to the trial, the billing

person "CC" is not identified.

The next issue is how many of those 360.30 hours should be included in the lodestar. If plaintiff's estimate of 25 percent is used, one would include 90.08 hours; if defendant's estimate of 15 percent is used, only 54.05 hours would be included. Recognizing that this is not an exact science, the higher figure will be used because Attorney Quinn is in the best position to estimate how much time he actually spent on the First Amendment claim. [FN15]

> FN15. The papers submitted by plaintiff's counsel state that identifying the number of hours spent on the First Amendment claim is "an impossible and unrealistic assignment, given the fluid nature of the allegations contained in this Complaint." Pl.'s Mem.Supp. (Renewed) Mot. [doc. # 178] at 1-2 (unnumbered). That said, plaintiff's counsel proceeds to provide the estimate of 25 percent, which the court is willing to credit.

Ninety hours for Attorney Quinn might appear to be somewhat excessive especially when viewed in light of the number of hours billed by Attorney Furniss. However, much of the time Attorney Quinn expended on the case through June 1997 was devoted to mediation, and it cannot be said that the amount of time he spent trying to resolve the case through mediation was unreasonable. He also devoted substantial time to deposition discovery, which was not clearly excessive (many of the deponents testified at trial). In addition, he spent substantial time opposing the defendant's motion for summary judgment, which challenged the First Amendment claim as well as the other claims.

*7 In this context, the court includes 90.8 hours in the lodestar as time reasonably expended by Attorney Quinn on this case through June 1997. Adding the 207.3 hours he spent thereafter yields a total of 298.10 hours.

**3. Hours for Work Done By Attorney C. Thomas Furniss**

It is undisputed that virtually all the hours Attorney

2000 WL 435494
(Cite as: 2000 WL 435494 (D.Conn.))

Furniss spent on the case should be included in the lodestar because from the outset of the case he focused on the First Amendment claim against Little. The only billing entry for him that the defendant would exclude from the lodestar is an entry for .60 hours on 5/16/95; defendant would exclude that entry on the ground that it relates to plaintiff's claim against the City. See Def.'s Opp. [doc. # 180] at 6.

Plaintiff has not taken issue with defendant's argument that this entry should be excluded. Other billing entries for Attorney Furniss also appear to relate to the claim against the City, namely: the other entry for 5/16/95 (.80 hours), and entries for 6/10/96 (1.2 hours), 6/20/96 (1.5 hours), and 6/22/96 (1 hour). Excluding those entries, the number of hours that should be included in the lodestar for Attorney Furniss is 83.10.

4. Other Attorneys

Plaintiff seeks compensation for time spent by other attorneys. Defendant would exclude any and all such hours on the grounds that plaintiff has offered no justification for seeking compensation for more than two attorneys and the billing entries for the other attorneys are "woefully non-descriptive and provide little assistance in assessing the reasonableness of the work done." Def.'s Opp. [doc. # 180] at 4. Plaintiff has not replied to these objections.

The plaintiff has the burden of demonstrating that it was reasonably necessary to involve additional lawyers in the prosecution of this case and that the time for which they seek compensation was reasonably expended. In the absence of such an explanation, their time must be excluded unless the court's firsthand knowledge of their involvement in the matter (or some other source of information) provides a sufficient basis for including their hours in the lodestar calculation.

In this case, the plaintiff claims a right to be compensated for services rendered by Attorneys Joseph P. Quinn, Jr. (91.40 hours), John J. Quinn (27 hours) and James F. Aspell (8 hours). Plaintiff's papers make no attempt to explain why their services were reasonably needed to prosecute this case. This is not fatal to the plaintiff's claim with regard to Attorney Joseph P. Quinn because he participated in a lengthy pretrial conference in the

courthouse on October 6, 1998, and then participated in the trial itself, and as a result I have a basis for assessing the nature and extent of his involvement in the case. However, this is not true with regard to the other two attorneys. Attorney Aspell did not file an appearance in the case and, although Attorney John J. Quinn did file an appearance on the eve of trial, I do not recall him participating in the pretrial conferences or the trial. [FN16]

> FN16. As the defendant correctly notes in its opposition memorandum, Attorney John J. Quinn has not submitted an affidavit. See Def.'s Opp. [doc. # 180] at 4. Plaintiff has not attempted to correct this oversight.

*8 Accordingly, I agree with the defendant that the hours billed by Attorneys Aspell and John J. Quinn should be excluded. With regard to Attorney Joseph P. Quinn, Jr., I find that the hours he billed beginning in October 1998 (i.e. in connection with his appearances in court) should be included in the lodestar. The total number of hours that will be included on this basis is 55.9.

5. Reasonable Hourly Rates

The parties' disagreement as to the hourly rates that should be used to calculate the lodestar requires me to make certain findings. Based on my knowledge of the market for legal services in the Hartford area, and the affidavits of plaintiff's counsel, I find as follows:

In the past 6 years in the Hartford area, trial lawyers with experience in litigation under 42 U.S.C. § 1983 alleging official misconduct have been compensated for their services in such cases in the range of $125 to $225 per hour.

During that time, the regular hourly rate charged by Attorneys Furniss and Joseph P. Quinn, Jr. has been $175, although on occasion each one has charged $200 per hour. Attorney James M. Quinn specializes in workers' compensation cases and usually does not bill by the hour but has charged fees that would yield an effective hourly rate in excess of $200.

None of these three attorneys claims to have been involved in any other actions under § 1983.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 435494
(Cite as: 2000 WL 435494 (D.Conn.))

Page 8

This appears to be the first case that Attorney James M. Quinn has tried in federal court, but he has tried civil cases in state court. Attorney Furniss frequently appears before this court in criminal cases, and he has tried civil cases in state court. Attorney Joseph P. Quinn, Jr. has tried civil cases in this court and state court.

Because compensation is sought for services rendered beginning in 1994, the hourly rate that is used in the lodestar calculation should take into account the need to provide compensation for delay in payment.

Based on these findings, I conclude that for the services they rendered in connection with litigating the successful First Amendment claim each of these three attorneys should be compensated at the same rate and that the rate should be $175 per hour.

Accordingly, the lodestar calculation is as follows: 387.1 hours multiplied by $175 per hour for a total of $67,742.50.

B. Adjustments to the Lodestar

For reasons that should be apparent, I am not persuaded that the lodestar figure should be adjusted upward as a bonus for success, as plaintiff has requested. In my opinion, given the limited nature of the plaintiff's success, a fee award of $67,742.50 is reasonable, if not generous. [FN17]

> FN17. My award of $67,742.50 is disproportionate to the recovery of $7,510 but only slightly more so than the fee of $58,662.50 suggested by the defendant, and disparity in itself does not provide a basis for reducing an award in a civil rights case. See *Quarantino*, 166 F.3d at 425-26; *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997).

C. Disbursements

Plaintiff is entitled to be reimbursed for reasonable out-of-pocket expenses. The defendant's memorandum in opposition criticizes plaintiff's request for $17,589.55 on the ground that not enough information has been provided to justify an award. Plaintiff has not responded to this objection.

Most of the items that appear on plaintiff's list of disbursements are self- explanatory as to the nature or purpose of the expense (e.g., mediation fees for Sta-Fed ADR, Inc., service of process fees, deposition expenses, expert witness fees, and fees for trial witnesses) and the total amount of those expenses appears to be within the range of reasonableness. [FN18] Other items on the list do not provide a basis for reimbursement without more information as to the nature and purpose of the expense and its connection to the First Amendment claim against Little (viz., disbursements before 6/14/94, disbursements for Pat Vontell for 3/19/96 and James M. Quinn for 4/4/96, disbursement to Russell Huk, disbursements to clerk for $105). As to these, I agree with the defendant that the plaintiff has failed to provide sufficient information to support an award. Accordingly, the plaintiff will be awarded an additional amount of $16,056.70.

> FN18. The deposition fees are on the high side. However, defendant has not contended that the deposition fees are excessive, many of the witnesses who were deposed wound up testifying at trial, and it would be difficult to allocate the time spent in depositions to one claim or another, see *Hensley*, 461 U.S. at 448 (Brennan, J., concurring in part and dissenting in part). The fees paid to Dr. Selig also appear to be on the high side but defendant has not challenged those fees as excessive either.

III. Conclusion

*9 For the foregoing reasons, the plaintiff's motion for an award of fees and costs is granted in part and denied in part. Plaintiff is awarded fees and expenses in the total amount of $83,799.20.

So ordered.

2000 WL 435494, 2000 WL 435494 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## Westlaw.

Slip Copy
(Cite as: 2004 WL 513829 (D.Conn.))

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

ACCEL INTERNATIONAL CORP. and
Allegiance Insurance Managers, Ltd., Plaintiffs,
v.
Thomas RENWICK, Defendant.

### No. 3:03CV983(RNC).

March 8, 2004.

Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for Plaintiffs/Counter Defendant.

Oliver B. Dickins, Jr., Simsbury, CT, for Defendant/Counter Claimants.

### *RULING AND ORDER*

### CHATIGNY, J.

*1 Magistrate Judge Martinez has recommended that plaintiffs' motion to remand be granted and that they be awarded the just costs of opposing the improper removal and obtaining the remand as permitted by 28 U.S.C. § 1447(c). In accordance with the Magistrate Judge's recommendation, plaintiffs have submitted a request for an award of fees and costs in the total amount of $4,464.15. Defendant contends that the motion to remand should be denied and that an award of fees and costs is unwarranted. After review of the parties' submissions, I agree with the Magistrate Judge that the motion to remand should be granted and that defendant should be required to pay plaintiffs' fees and costs, although not the full amount requested.

The Magistrate Judge correctly concluded that the action must be remanded because plaintiffs' claims are not completely preempted by federal law, as defendant erroneously contends, and subject matter jurisdiction is therefore lacking. The case plaintiff cites in his supplemental memorandum, *Hodges v. Demchuk*, 866 F.Supp. 730 (S.D.N.Y.1994), is not to the contrary. There, the state law claims were based entirely on defendants' allegedly wrongful conduct in the course of conducting discovery in federal court and the lawfulness of their conduct could not be determined without interpreting and applying federal law. Here, the conduct at issue concerns defendant's nonconsensual recording of telephone conversations, the lawfulness of which is governed solely by a state statute, Conn. Gen.Stat. § 52-570d.

Though the action must be remanded, plaintiffs are not necessarily entitled to recover fees and costs under § 1447(c). The discretionary decision whether to award fees and costs for improper removal requires a district court to apply a test of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *See Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 923-24 (2d Cir.1992). Applying this test, district courts generally decline to shift fees and costs unless the removal lacked a colorable basis. *See Interise Contracting v. Turner Steiner Intel, S.A.*, 2001 WL 812224, at *6 (S.D.N.Y. July 18, 2001); *Natoli v. First Reliance Standard Life Ins. Co.*, 2001 WL 15673, at *5 (S.D.N.Y. January 5, 2001).

Defendant's counsel contends that his decision to remove the case was at least arguably proper because plaintiffs' complaint was precipitated by defendant's deposition in a pending federal action and sought injunctive relief that would interfere with ongoing discovery proceedings in the federal court.

I credit counsel's statement that he believed removal was proper. Plaintiffs' state court complaint presented defendant's counsel with an unusual situation. The complaint was filed soon after the first session of defendant's deposition in the federal case. At the deposition, defendant revealed for the first time his possession of a diary containing notes of tape-recorded conversations. Plaintiffs' complaint sought "[t]emporary and permanent injunctive relief

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 513829 (D.Conn.))

Page 2

against the distribution or use of [the] diary and any
materials containing diary information and any
transcription, summaries or any other derivative use
thereof." Considering the timing and context,
defendant's counsel could reasonably believe that
this broadly-worded prayer for immediate,
extraordinary relief reflected a litigation strategy
aimed at convincing a state court judge to prevent
any further use of the diary whatsoever, including
even in the federal court action.

\*2 Defendant's counsel's belief that the case was
removable is a factor to be considered in
determining the "overall fairness" of an award of
fees and costs for improper removal, but it is not
dispositive because a finding of bad faith is not
required. *See Morgan Guaranty Trust Co. of New
York*, 971 F.2d at 923-24. Also to be considered is
whether counsel's good faith belief had a colorable
basis in law. If it did, defendant should not be
penalized. If it did not, holding defendant
responsible for plaintiffs' fees and costs may be
necessary to satisfy the test of "overall fairness ."

In this case, counsel's good faith belief that
removal was proper lacked a colorable legal basis.
Even if plaintiffs were using the state court in an
attempt to gain an advantage in the federal
proceeding, their complaint presented no federal
question.

Moreover, when plaintiffs promptly moved to
remand, they disavowed any intention to interfere
with the federal proceeding. The memorandum they
filed in support of their motion plainly stated that
"[t]he injunctive relief sought in this action is not
intended to interfere with the process of discovery
in any other federal court action, but merely seeks
to prevent any dissemination of information by the
defendant outside of any disclosure that might be
compelled in those court proceedings." Pls. Mot. to
Remand, p. 2. Given that unequivocal statement on
the record, defendant's counsel should have realized
that this case could not be maintained in federal
court due to a lack of subject matter jurisdiction.
His failure to do so caused plaintiffs to needlessly
incur additional fees and costs to obtain a remand.

I therefore agree with the Magistrate Judge that an
award of fees and costs is reasonable and just. [FN1]
The remaining issue is the amount that should be
awarded.

FN1. Defendant asserts that plaintiffs will
not be required to pay fees because they
are insolvent, but plaintiffs have
successfully rebutted that assertion.

Plaintiffs seek reimbursement for 5 hours of work
by Attorney Richard Weinstein at a rate of $375 per
hour, 8.75 hours of work by Attorney Nathan
Schatz at a rate of $225 per hour, and $620.40 for
computerized legal research. Defendant opposes the
request on the grounds that it is not adequately
documented and computer research is not
compensable.

Defendant's objection to the adequacy of plaintiffs'
documentation of their request has merit. The
starting point for determining the amount that
should be awarded is the calculation of the lodestar
amount, which is arrived at by multiplying "the
number of hours reasonably expended on the
litigation ... by a reasonable hourly rate." *Hensley v.
Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76
L.Ed.2d 40 (1983); *see Quaratino v. Tiffany & Co.*,
166 F.3d 422, 425 (2d Cir.1999). A lodestar cannot
be calculated unless a fee applicant provides time
records specifying the date, hours expended, and
nature of work performed. *See Hensley*, 461 U.S. at
437 & n. 12; *Cruz v. Local Union No. 3 of Int'l
B'hd. of Elec. Workers*, 34 F.3d 1148, 1160-61 (2d
Cir.1994). In this case, no time records have been
submitted and the affidavits on which plaintiffs rely
lack the requisite specificity. Accordingly, the
number of compensable hours will be reduced as
follows: for Attorney Weinstein--from 5 hours to 3;
for Attorney Schatz--from 8.75 hours to 5.

\*3 The hourly rate to be used in calculating the
lodestar should reflect prevailing market rates for
attorneys of comparable skill, experience, and
reputation. *See Blum v. Stenson*, 465 U.S. 886, 896
n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984);
*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d
Cir.1998). When an attorney submits only his own
affidavit to establish the prevailing rate for similar
services, the court looks to previous fee awards. *See
Evans v. State of Conn. .*, 967 F.Supp. 673, 691
(D.Conn.1997). Based on the reported decisions, it
appears that hourly rates awarded in this district
have not exceeded $275 for highly experienced
attorneys, [FN2] or $175 for associates. [FN3] On
this record, then, those are the rates that will be
used. [FN4]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
**(Cite as: 2004 WL 513829 (D.Conn.))**

FN2. *See, e.g., Tsombanidis v. City of West Haven,* 208 F.Supp.2d 263, 275-76 (D.Conn.2002) (\$275 per hour); *LaPointe v. Windsor Locks Bd. of Educ.,* 162 F.Supp.2d 10, 18 (D.Conn.2001) (\$275 per hour); *Evanauskas v. Strumpf,* 2001 WL 777477, \*7-8 (D.Conn. June 27, 2001) (\$275 per hour); *Y.O. By and Through M. v. New Britain Bd. of Educ.,* 1 F.Supp.2d 133, 139-40 (D.Conn.1998) (\$250 per hour); *Calovine v. City of Bridgeport,* 1998 WL 171432, \*1 (D.Conn. Feb.4, 1998) (\$250 per hour).

FN3. *See Tsombanidis,* 208 F.Supp.2d at 276 (citing cases awarding hourly rates of \$125 to \$175 for associates)

FN4. I imply no view as to the reasonableness of the rates actually charged by Attorneys Weinstein and Schatz.

In this District, computerized legal research fees are not recoverable as costs unless the court orders otherwise. *See* Local Rule 54(c)(7); *Schmidt v. Devino,* 206 F.Supp.2d 310, 314-15 (D.Conn.2001) ; *Omnipoint Communications, Inc. v. Planning & Zoning Comm'n,* 91 F.Supp.2d 497, 500 (D.Conn.2000). Plaintiffs have not submitted computer records to support an award of these costs. Nor have they provided any reason to overcome the presumption that such costs ordinarily are not recoverable. Therefore, the costs will not be shifted.

Taking these adjustments into account, plaintiffs will be awarded fees and costs in the total amount of \$1,700 (3 hours at \$275 for Attorney Weinstein's work, and 5 hours at \$175 for the work of Attorney Schatz).

Accordingly, the recommended ruling is hereby approved and adopted, plaintiffs' motion to remand is granted, plaintiffs' motion for a determination of fees and costs is granted, plaintiffs are awarded \$1,700 pursuant to 28 U.S.C. § 1447(c), and the action is hereby remanded to the Connecticut Superior Court.

So ordered.

2004 WL 513829 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**Zenas Zelotes** LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

Jones, Day, Reavis & Pogue
Attn: Daniel J. McLoon
555 West 5th Street, Suite 4600
Los Angeles CA 90012-1025    4/30/04

**Zenas Zelotes** LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Clerk of Court
450 Main Street
Hartford CT 06103    4/30/04

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a copy of the document(s) attached was served upon each addressee by USPS first class mail (or in-hand service) on the date(s) reflected.

4/30/2004

ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC*
Shaw's Cove 5, Suite 202
New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001
Tel: (860) 442-2265 // Fax: (860) 439-0295

**Zenas Zelotes** LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Chambers (Chatigny J.)
450 Main Street
Hartford CT 06103    4/30/04

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

Jones, Day, Reavis & Pogue
Attn: Daniel J. McLoon
555 West 5th Street, Suite 4600
Los Angeles CA 90012-1025     4/30/04

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Clerk of Court
450 Main Street
Hartford CT 06103     4/30/04

---

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a copy of the document(s) attached was served upon each addressee by USPS first class mail (or in-hand service) on the date(s) reflected.

4/30/2004

_____

ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC*
Shaw's Cove 5, Suite 202
New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001
Tel: (860) 442-2265 // Fax: (860) 439-0295

---

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Chambers (Chatigny J.)
450 Main Street
Hartford CT 06103     4/30/04