UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
)
Lewis C. Brown                                              )       3:01cv1967(RNC)
                                                            )
                                                            )
                            Plaintiff,                      )
        v.                                                  )
                                                            )
                                                            )
Experian Information Solutions, Inc.                        )
                                                            )
                            Defendant.                      )       May 24, 2004
                                                            )
---------------------------------------------------------------X

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

Experian Information Solutions, Inc. ("Experian") respectfully submits this Memorandum of Law in opposition to Plaintiff's Motion for Award of Attorney's Fees and Costs ("Motion for Attorney's Fees") in the amount of $134,167.50.[1]

### PRELIMINARY STATEMENT

Fewer than two percent of federal civil cases end with jury verdicts[2], and this case should not have been one of them. Experian made numerous attempts to reach a reasonable settlement of the action long before trial and continued those efforts even after the trial had started. Plaintiff and his counsel, Attorney Zenas Zelotes, rejected each and every attempt. Now, after receiving a verdict for less than Experian had offered in settlement, Plaintiff's counsel seeks to recoup the difference in attorney's fees. But the conduct of Attorney Zelotes during discovery and

---

[1] Experian does not contest the requested $1,737 in costs.

[2] *See* William Glaberson, *Juries, Their Powers Under Siege, Find Their Role Is Being Eroded*, N.Y. Times, March 2, 2001, at A1 (stating that only 1.5 percent of federal civil cases are resolved by juries).

settlement negotiations mandates that the fee award be greatly reduced. Indeed, the Court should look no further than the words of Plaintiff's counsel himself when deciding this motion for attorney's fees:

> SHOW ME THE MONEY. Stop dancing around the issue; talk a language I understand; dollars and cents; I'm not the pro-bono society; I'm a plaintiff's trial lawyer. You want to settle this? Fine. (Excerpts from January 28, 2002 Email from Zenas Zelotes, Esq. to George Kostolampros, Esq., attached as Ex. 2 to the Affidavit Of George Kostolampros In Opposition To Plaintiff's Motion For Attorneys Fees (hereinafter "Kostolampros Aff.")) (emphasis in original);
>
> *If your client offered us $150,000 today, Lewis and I would tell Experian to go pound sand.* When your client reads my memo, it is going to get down on its knees and BEG me to take its money. Know what? *Nothing short of seven figures is going to settle this case.* (Excerpts from October 21, 2002 Email from Zenas Zelotes, Esq. to George Kostolampros, Esq., attached as Ex. 6 to the Kostolampros Aff.) (emphasis added);
>
> Judges make mistakes. *Juries make me happy.* Underestimate my talent at your client's peril. (Excerpts from May 24, 2002 Email from Zenas Zelotes, Esq. to George Kostolampros, Esq., attached as Ex. 4 to the Kostolampros Aff.) (emphasis added).

Unfortunately for Mr. Zelotes (and for Experian), no one had underestimated anyone's "talent." The only miscalculation involved here was the completely unrealistic estimate of the value of this case made by Plaintiff's counsel. As a result, he and his client rebuffed reasonable offers to settle and ended up with a jury verdict for less than what was offered to them long before. Because Plaintiff and his attorney preferred to litigate rather than negotiate, the Court should deny almost all of the claimed attorney's fees.

## STATEMENT OF FACTS

Plaintiff filed the complaint in this matter on or about October 18, 2001, alleging violations of the FCRA and Connecticut Unfair Trade Practices Act. In the complaint, Plaintiff pleaded that Experian willfully failed to follow reasonable procedures as required by 15 U.S.C.

§ 1681e(b) and/or negligently failed to follow reasonable procedures as required by 15 U.S.C. § 1681e(b), and willfully failed to disclose information as required by 15 U.S.C. § 1681g(a)(1) and/or negligently failed to disclose information as required by 15 U.S.C. § 1681g(a)(1). Plaintiff also asserted a Connecticut unfair trade practices claim.

Discovery began soon after the filing of the complaint and continued through March 2003. However, as explained more fully in the Affidavit Of George Kostolampros, only 5 depositions took place and scarcely more than a file folder of documents were exchanged. Kostolampros Aff. ¶ 24. Plaintiff did occupy the Court's time with numerous unsuccessful, and indeed sometimes frivolous, motions. *Id.* ¶¶ 20, 23, 27. Plaintiff also spent time bombarding Experian's counsel with insulting, abusive remarks throughout this period. *Id.* ¶ 31.

From the beginning to the very end of the case, Plaintiff's counsel Zenas Zelotes and his client Lewis Brown rejected reasonable offers to settle the above action, including a Rule 68 offer of judgment for $60,000 made by Experian in November 2003 almost five months before trial. Kostolampros Aff. ¶ 15. Instead, Plaintiff *increased* his initial settlement demand of $150,000 to $2.5 million, and continued to insist that the case was worth "seven figures" right through the end of trial. *Id.* ¶¶ 9-10; *see also* October 21, 2002 email from Zenas Zelotes, Esq., attached as Ex. 6 to the Kostolampros Aff.; *see also* Declaration Of Daniel J. McLoon In Opposition To Plaintiff's Motion For Attorneys Fees dated May 20, 2004 (hereinafter "McLoon Decl.") (during chambers conferences with the Court, counsel for Plaintiff insisted that the case was worth seven figures and that Plaintiff would reject settlement offers in the range of $80,000). Worse, for a period of time, Plaintiff demanded to negotiate only with the Chief Executive Officer of Experian. November 12, 2002 Letter, attached as Ex. 7 to the Kostolampros Aff.

Mr. Zelotes repeatedly stated his belief that he was the "better lawyer" (Ex. 6 to the Kostolampros Aff.) whose time would be wasted discussing settlement. November 3, 2003 letter, Ex. 8 to the Kostolampros Aff.

The trial began on April 13, 2004 and lasted 3 days. McLoon Decl. ¶ 7. The trial consisted of the testimony of five witnesses and fewer than 40 documents, most of which were copies of letters that had been written by Plaintiff. McLoon Decl. ¶ 8. The jury found for Experian on three of five of the Plaintiff's claims—negligent and willful failure to follow reasonable procedures to assure maximum possible accuracy, and willful failure to disclose Plaintiff's Experian credit information. On the fourth and fifth claims for negligent failure to disclose information as required by 15 U.S.C. § 1681g(a)(1) and under the Connecticut unfair trade practices act, the jury found for Plaintiff and returned a verdict for only $50,000 – an amount identical to that offered by Experian 6 months before trial and $10,000 less than Experian's November 26, 2003 Rule 68 offer of judgment. Having expended the time and resources of the Court for a case that could have, and indeed should have, settled long before trial, counsel now wants to be paid a reward for his failed and wasteful efforts.

On April 30, 2004, Plaintiff filed his Motion for Attorney's Fees and asked for $134,167.50. Plaintiff computes this amount by multiplying an hourly rate of $225 for Mr. Zelotes (an attorney practicing law in Connecticut for two months prior to the filing of this action[3]) times 596.3 hours on a case whose trial lasted 3 days and resulted in a $50,000 verdict. Point I of the Argument Section of this memorandum will discuss how Plaintiff's lodestar hourly

---

[3] Plaintiff's counsel acknowledges that his law practice did not begin in Connecticut until August 2001 – two months before he filed the instant action. (Affidavit Of Zenas Zelotes Esq. ¶ 10 ("I . . . opened my litigation practice in August 2001")).

rate should be reduced due to his inexperience and because the trial result can hardly be called a victory in light of the earlier settlement offers. Point II of the Argument Section of this brief explains how Mr. Zelotes is not entitled to attorney's fees for time spent making outrageous demands during settlement negotiations, for his pointless and protracted disputes over discovery, for non-lawyer work performed by him (e.g., over 3.5 hours "assembling documents")[4], for duplication of efforts, for researching frivolous positions taken (e.g., over 30 hours researching a motion to permit Mr. Zelotes to serve as the court reporter and videographer at a nonparty deposition)[5] and for utterly indefensible amounts of time spent on legitimate work, e.g., over 133 hours opposing a summary judgment motion.[6] Plaintiff's counsel even asks for over $5500 for making this motion for attorney's fees.[7] In sum, the Court should decline the invitation to reward litigation seeking a "lottery result" long after the case should have settled and deny Plaintiff's requested fee amount. Experian asks instead that the Court grant no more than $30,000 in attorney's fees, representing 200 hours of work at the rate of $150 per hour.

---

[4] *See* Time sheets attached to Zelotes Affidavit at November 3, 2002.

[5] *See* Time sheets attached to Zelotes Affidavit at January 29, 2002 to February 1, 2002.

[6] *See* Time sheets attached to Zelotes Affidavit at September 21, 2002 to November 8, 2002, and November 22, 2002, and May 27-30, 2003.

[7] *See* Time sheets attached to Zelotes Affidavit at April 22, 2004 to April 29, 2004.

## ARGUMENT

### I.

### THE LODESTAR FIGURE MAY BE ADJUSTED BASED ON SEVERAL FACTORS, AND THE FACTORS IN THIS CASE SUPPORT A DOWNWARD ADJUSTMENT

**A.    Plaintiff's Counsel Unreasonably Refused To Settle
This Case And Now Seeks Reward For Wasting Public
And Private Resources**

The normal starting point for calculating reasonable attorney's fees is the calculation of the "lodestar" figure, which is arrived at by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *See Tsombanidis v. City of West Haven*, 208 F. Supp.2d 263, 270 (D. Conn. 2002), *aff'd in part, rev'd in part* (on other grounds), 352 F.3d 565 (2d Cir. 2003). Far from being an automatic calculation, however, the lodestar figure is one that the Court should "carefully approach." *See Smart SMR of New York, Inc. v. Zoning Commission of the Town of Stratford*, 9 F. Supp.2d 143, 147 (D. Conn. 1998). The Second Circuit has cautioned that attorney's fees are to be awarded "with an eye toward moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *See, e.g., Tsombanidis*, 208 F. Supp.2d. at 270 (citing *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983)). In FCRA cases in particular, the request for attorney's fees is subject to abuse by litigants and their counsel:

> The Fair Credit Reporting Act and other statutes designed to protect the rights of consumers serve an extremely salutary purpose. They are, however, subject to abuse by litigants and their lawyers who pursue colorable claims under the statute seeking recovery far beyond the monetary worth of those claims. The pursuit of such claims is wasteful of both private and public resources, and is against the public interest. The only tool available to a court for curtailing this potential abuse is not to

> compensate attorneys for the time they spend in pursuing a claim beyond reason.

*Austin v. AT&T Corp.*, No. Civ. JFM-02-1118, 2004 WL 911302, *1 (D. Md. Apr. 15, 2004). Indeed, Plaintiff, by proceeding to trial and spurning all reasonable attempts at settlement, has sought recovery far beyond the monetary worth of his claims. Plaintiff's counsel should not now be rewarded for such wasteful conduct.

As evidenced by Experian's Offer of Judgment of November 26, 2003 for $60,000 (Ex. 10 to the Kostolampros Aff.), Experian was willing to settle this dispute for a reasonable sum, and Experian negotiated in good faith to achieve that settlement. Indeed, during trial Experian's counsel represented that Experian was willing to add $15,000 to $20,000 to its prior offer – bringing its total settlement offer up to $80,000. McLoon Decl. ¶ 5. Clearly, Experian offered *more* in settlement than Plaintiff obtained from the jury's verdict. As explained in the Kostolampros Affidavit, Plaintiff was apparently not motivated by the same desire to settle, and, by his actions, seemed interested only in trying to hit a "home run." Kostolampros Aff. ¶¶ 7-17. By Plaintiff's counsel's own words, Plaintiff and Experian were not "in the same universe" (Ex. 8 to the Kostolampros Aff.) when it came to settlement discussions: Plaintiff's Settlement Offer & Damage Analysis sought $1.8 million in actual and punitive damages, as well as $73,000 in fees and costs, as of November 17, 2003. *See* Ex. 9 to the Kostolampros Aff. Plaintiff ultimately recovered $50,000 on a single claim of liability.

Here, counsel's actions "unreasonably prevented a prompt resolution of this dispute by rejecting a monetary offer in a reasonable amount . . . ." *Austin*, 2004 WL 911302, at *1. Plaintiff's counsel sought relief far in excess of the value of his claims, and now seeks to profit financially for time spent pursuing this unreasonable award. The jury rejected Plaintiff's

valuation of the case. The Court should do the same and deny Plaintiff's counsel his purported "reward" for such tactics.

### B.    Plaintiff Did Not Achieve A High Degree Of Success At Trial

The most "critical" factor in determining the reasonableness of a fee award is "the degree of success obtained." *DeLeon v. Little*, No. 3:94CV902, 2000 WL 435494, *4 (D. Conn. 2000) (Chatigny, J.) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "If a plaintiff recovers only minimal damages that fall well short of the relief sought, a reduction in the lodestar amount may be necessary and appropriate." *DeLeone*, 2000 WL 435494, at *4. Plaintiff's counsel notes numerous times in the memorandum of law and affidavit in support of the Motion for Attorney's Fees that the judgment obtained was "excellent" or "substantial." *See, e.g.*, Motion for Attorney's Fees at pp. 6, 15, 19. Were one to take Plaintiff's counsel's statements at face value, one would suspect Plaintiff "won the lottery."

Plaintiff's pre-trial valuation of the case, however, belies those contentions. As mentioned *supra*, Plaintiff's Settlement Offer & Damage Analysis—submitted to the Court only five months before trial—valued the case at approximately $1.8 million, including actual and punitive damages. In fact, this valuation grew in the weeks leading up to trial. During trial, Plaintiff's jury demand soared to $2.9 million, including actual and punitive damages. McLoon Decl. ¶ 9. Yet Plaintiff received an award of only $50,000. This award was significantly lower than Plaintiff's pre-trial valuation, and significantly lower than Plaintiff's jury demand, and also was lower than amounts Experian had offered in settlement. Such an award can hardly be deemed "substantial" or "excellent." Indeed, immediately following the jury verdict at trial,

Plaintiff congratulated Experian's counsel for the success they had achieved at trial. McLoon Decl. ¶ 12.

The fact is that Plaintiff *failed* on three of his five causes of action, and *failed* to demonstrate any willful behavior on Experian's part that would lead to punitive damages. The only claim on which Plaintiff maintained any success was a claim on which Experian all but conceded liability. The Court will recall that Experian's counsel told the jury in both opening and closing arguments that Experian "should have done a better job" helping Plaintiff get a copy of his Experian credit file report. McLoon Decl. ¶ 11. Far from being an "excellent" award for Plaintiff, the judgment was in fact a success for Experian. The Court should "have no doubt that the modest relief plaintiff has obtained falls well short of the relief [he] sought to obtain in bringing this action, and that a fully compensatory fee award would be unreasonable in light of the limited nature of [his] success." *DeLeon*, 2000 WL 435494, at *6. Accordingly, the lack of success achieved by Mr. Zelotes should depress his hourly rate in the lodestar calculation.

### C.  Due To His Inexperience, Plaintiff's Counsel's Hourly Rate Ought Not Exceed $150 Per Hour

Courts frequently reduce lodestar hourly rates to reflect the actual experience level of counsel, and the Court here should limit Mr. Zelotes' rate to $150 per hour. By his own admission, Mr. Zelotes graduated from law school in 2000 (approximately a year and half before bringing this action) but did not start practicing in Connnecticut until August 2001 – two months before filing this lawsuit. Zelotes Aff. ¶ 10. Despite this lack of experience, Mr. Zelotes insists that he is entitled to $225 per hour for his work from complaint through trial. His reasoning for this figure consists of his insistence that "I regularly litigate in both state and federal courts." However, he identifies no cases *prior to this one* in which he litigated the action through trial.

His hourly rate of $225 does not adjust for the fact that much of his alleged experience must have arisen during this litigation. See Williams v. New York City Housing Authority, 975 F. Supp. 317, 322 (S.D.N.Y. 1997) ("[i]n this Circuit, the practice has been to apply the historic rate . . ."). Nor does he identify *any* clients that have ever paid him $225 per hour. Further, it appears that much of the time spent on the file was used in educating Mr. Zelotes on the basics of federal practice. See e.g. Time sheets attached to Zelotes Affidavit at January 29, 2002 through February 1, 2002 (over 20 hours spent researching and writing memoranda regarding Mr. Zelotes' right to act as attorney, court reporter and videographer at the same deposition); see also Kostolampros Aff. ¶¶ 19-21). "[L]awyers should not expect their clients to foot the bill so that they can acquire the knowledge necessary to litigate these cases." Smart SMR, 9 F. Supp.2d at 151. "Instead, the lawyer's hourly billing rate should reflect the lawyer's expertise." Id. Here, fresh out of law school, Mr. Zelotes had little expertise, and his billable rate should reflect this. Accordingly, the Court should limit his hourly rate to $150, which is consistent with rates approved by other district courts in the Second Circuit. Williams, 975 F. Supp. at 323 (approving $135 for "junior associates"); see also Alnutt v. Cleary, 27 F. Supp.2d 395, 399-400 (W.D.N.Y. 1998) (approving historic rates of $120 to $180 for attorney with more than three years of experience at the time she was assigned the case).

## II.

### IN ADDITION TO THE ABOVE FACTORS, PLAINTIFF'S COUNSEL EXPENDED UNNECESSARY AMOUNTS OF TIME ON THIS CASE

**A.  Plaintiff's Counsel Improperly Calculated The Hours Reasonably Expended In The Litigation**

Plaintiff's counsel has included every hour billed to this case since its inception (with the exception of a handful of hours billed at "no charge") and included this in the lodestar figure, apparently without concern as to whether the time was reasonably necessary to prosecute the action or was excessive given the number of hours billed. As indicated below, there should be no or greatly reduced credit for numerous categories of time.

        1.  *Counsel's Time Records Are Vague And Undescriptive.*

A number of time entries are so impermissibly vague that the Court cannot award compensation. For example, Plaintiff contends that on January 30, 2002, 5 hours were billed to "working on god [sic] memo."[8] Another 400 minutes was described as "[g]eneral trial preperation [sic]; planning."[9] On their face, these entries are so vague as to preclude a proper examination as to whether the time was reasonably spent. *See Smart SMR*, 9 F. Supp.2d at 152-53 ("courts have applied an across the board reduction due to entries that failed to indicate the issue researched or the subject of a conference call, telephone call or meeting."). Time entries that simply reference an activity without more detail, as many of Plaintiff's counsel entries do, lack specificity and are therefore incomplete. The insufficiency of the entries prevents any outside party from conducting a meaningful review of counsel's expenditure of time. Accordingly, the Court must reduce the lodestar figure to account for these entries. *See Smart*

---

[8] *See* Time sheets attached to Zelotes Affidavit at January 30, 2002.

-11-

*SMR*, 9 F. Supp.2d at 153 (reducing lodestar amount by 30% due to vague and insufficient entries).

### 2. Grossly Inflated Amounts Of Time Cannot Be Justified.

Plaintiff's time records reflect enormous amounts of time for routine tasks. It took Mr. Zelotes more than 8 hours before he was ready to file the complaint.[10] From the time the complaint was filed until the first deposition, he billed more than 170 hours.[11] Mr. Zelotes billed over 133 hours to the opposition to Experian's summary judgment motion.[12] He billed approximately 85 hours to prepare for a three day trial.[13] Finally, perhaps anticipating that the Court would compensate him in full for his work, he billed over 25 hours to this motion for attorneys fees.[14] Hours that are "excessive, redundant or otherwise unnecessary" should be excluded from the lodestar calculation. *See Tsombanidis*, 208 F. Supp.2d. at 270. The Court therefore should reduce the amounts claimed to amounts appropriate for the tasks.

### 3. Time Spent On Settlement Should Be Excluded.

As indicated previously, Plaintiff made no genuine attempt to resolve this case for a reasonable amount. However, Plaintiff now seeks attorney's fees for time spent pursuing an

---

(continued)

[9] *See* Time sheets attached to Zelotes Affidavit at January 26, 2004 (more than 2 months before trial).

[10] *See* Time sheets attached to Zelotes Affidavit from October 10, 2001 to October 18, 2001.

[11] *See* Time sheets attached to Zelotes Affidavit from October 29, 2001 through June 30, 2002.

[12] *See* Time sheets attached to Zelotes Affidavit from September 21, 2002 through November 8, 2002, and on November 22, 2002; *see also* Time sheets attached to Zelotes Affidavit at May 27, 2003 through May 30, 2003.

[13] *See* Time sheets attached to Zelotes Affidavit from March 27, 2004 (date of last deposition) to April 12, 2004 (last day before trial).

[14] *See* Time sheets attached to Zelotes Affidavit from April 22, 2004 through April 29, 2004. This time includes a "major overhaul of fee petition memo . . . ." April 29, 2004 entry.

unattainable windfall.[15] Indeed, much of this time appears to be devoted to drafting the taunting emails purporting to terminate settlement negotiations and proceed with trial. *See* Kostolampros Aff. ¶ 17. None of this time should be compensated.

    4.  <u>Time Spent On Frivolous Motions Should Be Excluded.</u>

As explained in the Kostolampros Affidavit, much of Mr. Zelotes' time was spent on frivolous posturing and obstruction. Examples include a motion to permit him to serve as court reporter, refusal to agree to a routine confidentiality order, a motion to compel interrogatories that were never served, a withdrawn motion for Rule 11 sanctions and significant time spent verbally abusing opposing counsel. Kostolampros Aff. ¶¶ 18-30. Indeed, as Mr. Kostolampros puts it, "Mr. Zelotes' work on this case consisted in significant part of insults, threats, and boasts, not legitimate legal work . . . ." *Id.* ¶ 31. The Court should not reward this conduct with compensation.

    5.  <u>Some Time Entries Reflect Duplicative And/Or Clerical Work.</u>

Mr. Zelotes indicates that he has "full responsibility for the legal affairs, management, organization, marketing, financial obligations and expansion of [his] practice." Zelotes Aff. ¶ 14. Tellingly, his time records do not reflect *any* assistance from a secretary or paralegal. Though he purports to deduct just over 7 hours as "no charge" (Zelotes Aff. ¶ 7), numerous time entries reflect clerical work.[16] Additionally, much work preparing for trial (or depositions) was

---

[15] *See e.g.* Time sheets attached to Zelotes Affidavit (during 2001) at November 29, December 1, and December 17; (during 2002) at January 1, 14, and 31, March 21, May 24, June 20, November 12; (during 2003) November 3, 5, 6, and 21.

[16] *See e.g.* Time sheets attached to Zelotes Affidavit at October 18, 2001 ("file complaint with clerk"), December 28, 2001 ("preparing joint conf. report for remailing"), January 5, 2002 ("filing/photocopying/mailing"), March 7, 2002 ("breaking down discovery by category & organizing").

done long before the trial itself and appears to have been duplicated later.[17] None of this time should be compensated.

### B. The Court Should Limit The Total Amount Of Time To 200 Hours

As indicated previously, this was a straightforward case that was tried in 3 days. Limited depositions and document exchanges took place. Experian therefore calculates the total amount of time that should have been billed as follows:

- 20 hours for initial investigation, drafting and responding to pleadings and initial document discovery;

- 50 hours for depositions;

- 30 hours for summary judgment motions and other pretrial filings; and

- 100 hours for trial preparation and attendance.

At a rate of $150 per hour, this would amount to no more than $30,000.

---

[17] *Compare* Time sheets attached to Zelotes Affidavit on October 17, 2001 ("[m]eet with client (de facto mini-deposition) *with* July 1, 2002 ("meet w/ Lewis in Rocky Hill one day in advance of deposition to prepare client and review evidence . . . "); *compare also* January 4-5, 2002 (over 2 years before trial) ("drafting themes for opening argument", "working on closing", and "discuss . . . trial strategy") *with* April 9-12, 2004 ("developing and practicing opening argument", "working on elements of closing argument", and "practice and brainstorm opening and closing arguments").

## CONCLUSION

For the reasons set forth above, Experian respectfully requests that the Court grant attorneys of no more than $30,000.

Dated:   May 24, 2004

                                  EXPERIAN INFORMATION SOLUTIONS, INC.

By: _Brien P. Horan_
Brien P. Horan (ct06870)
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:   (860) 275-8307
Facsimile:    (860) 275-8299

Daniel J. McLoon, *admitted pro hac vice*
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, California 90013
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539

Counsel for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

Brien P. Horan certifies that on May 24, 2004 he caused the within Memorandum of Law and supporting affidavits to be served via Federal Express, overnight delivery on the following:

Zenas Zelotes Esq.
Zenas Zelotes LLC
Shaw's Cove 5, Suite 202
New London, CT 06320
(860) 442-2265

Attorneys for Plaintiff Lewis C. Brown

*Brien P. Horan*
Brien P. Horan