UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lewis C. Brown | 301cv1967(RNC) |
| Plaintiff, | |
| v. | |
| Experian Information Solutions, Inc. | |
| Defendant. | |

AFFIDAVIT OF GEORGE KOSTOLAMPROS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR
ATTORNEYS FEES

GEORGE KOSTOLAMPROS, being duly sworn, deposes and says:

1. I am a Staff Attorney at the United States Securities & Exchange Commission ("SEC"), Division of Enforcement for the Northeast Region, located at 233 Broadway, New York, New York.

2. Before accepting a position at the SEC, I was an associate at the law firm Jones Day from September 1999 until January 2004.

3. During my time at Jones Day, I defended Experian Information Solutions, Inc. ("Experian") in several matters involving allegations of violations of the federal Fair Credit Reporting Act.

4. From November 2001 until January 2004, I was counsel to Experian in the above-captioned action. During this time period, I dealt with Zenas Zelotes, Esq., counsel for Plaintiff in the above action.

5. As will be detailed below, Mr. Zelotes' actions during the litigation ensured both that the case would not settle and that needless time would be spent litigating.

6. Though a full account of his deeds would take many pages to recount, three main areas of his conduct led to a needlessly protracted litigation: 1) Mr. Zelotes' settlement posture; 2) Mr. Zelotes' lack of experience in discovery matters; and 3) Mr. Zelotes' abusive conduct during the litigation.

## SETTLEMENT DISCUSSIONS

7. Mr. Zelotes made clear from the beginning that he was not serious about settling the action for any reasonable amount.

8. For example, the initial settlement demand was for $150,000, yet he was unable to demonstrate how his client was damaged in any material way by Experian's conduct. When this was explained to him, he would respond with threats of trial victories (including punitive damages) and boasts regarding his legal abilities in the courtroom. Examples of this unprofessional settlement posture include emails dated January 25, 2002 ("[d]o you really want to try this case with me?") (attached as Exhibit 1), January 28, 2002 ("SHOW ME THE MONEY.... if you make me prepare this case for trial, it's *going* to trial. Tell *that* to Experian.") (emphasis in original) (attached as Exhibit 2), April 24, 2002 ("What part of 'punitive damages' doesn't your client understand?") (attached as Exhibit 3), May 24, 2002 ("Judges make mistakes. Juries make me happy.") (attached as Exhibit 4).

9. Mr. Zelotes soon revoked the $150,000 offer, insisting that "the price of settlement just went up." July 29, 2002 email (attached as Exhibit 5). Instead, he took the position that "[n]othing short of seven figures is going to settle this case." October

21, 2002 email (attached as Exhibit 6). No material change had occurred in the case to warrant an increase in Plaintiff's demand.

10. He maintained the demand for "seven figures" until I left Jones Day in January 2004, insisting that he was "far and away the better lawyer" and that I would "live and learn." Ex. 6.

11. In a November 12, 2002 letter, Plaintiff then demanded $2.5 million. In the letter, Mr. Zelotes refused to negotiate with me, declaring that speaking with me would be a "waste" of his time. Instead, Mr. Zelotes would only speak with Experian's "chief executive officer in New York City or Connecticut." November 12, 2002 letter, attached as Exhibit 7.

12. Settlement discussions stalled for some time after this announcement.

13. Despite the unreasonable position taken by Plaintiff, Experian again tried to settle the case, but Mr. Zelotes and his client rejected an offer to settle for $50,000. November 3, 2003 Letter, attached as Exhibit 8. Plaintiff's position was that the parties "do not coexist in the same universe." Plaintiff then announced "Abandon hope all ye who pray for settlement."

14. Plaintiff then served a "Settlement Offer & Damages Analysis" dated November 17, 2003 (Ex. 9 hereto) estimating damages at $300,000 actual, $1.5 million punitive along with $73,000 in fees and costs.

15. Experian again tried to avoid protracted litigation and trial by making an offer of judgment of $60,000 on November 26, 2003. November 26, 2003 letter, attached as Exhibit 10. Plaintiff rejected this offer.

16. Upon reviewing the time sheets submitted by Mr. Zelotes in support of his motion, it is apparent that he billed a significant portion of his time to his settlement "strategy."

17. However, in addition to the emails and letters outlined above, most of the telephone calls between us were initiated by Mr. Zelotes and were characterized by Mr. Zelotes' boasting and insulting me, yet not truly advocating for his client in any meaningful way. Thus, settlement between the parties was all but impossible.

## **DISCOVERY**

18. Mr. Zelotes frequently took outrageous positions in discovery, increasing the burden on both sides and on the Court. Indeed, at one point, he referred to the rules of discovery as "petty procedural issues." October 21, 2002 email ("I may not be a wiz on petty procedural issues, but I know how to assemble and try a case better than just about anyone") (attached as Exhibit 6). It was clear from the outset that Mr. Zelotes knew little about discovery.

19. For example, in January 2002, Mr. Zelotes noticed the deposition of non-party witness Mary Woehrle. However, in arranging the deposition, Mr. Zelotes insisted that *he himself* serve as both the court reporter and the videographer for the deposition. *See* January 23, 2002 email (attached as Exhibit 11), January 25, 2002 email (attached as Exhibit 12).

20. The obvious impropriety of this was explained to Mr. Zelotes, but he insisted that he would file a motion to compel the deposition so that he could be the court reporter.

21.     I have reviewed Mr. Zelotes' time sheets submitted in connection with this motion, and it appears that Mr. Zelotes devoted over 20 hours researching and drafting memoranda in support of his alleged "right" to serve as court reporter and videographer. *See* Time Sheets submitted in support of Plaintiff's Motion For Attorneys Fees at January 29, 2002 through February 1, 2002.

22.     Another example of a discovery abuse was Plaintiff's filing of a motion for an extension of time to serve discovery responses without asking for the extension. March 6, 2002 Letter (attached as Exhibit 13). His time for this can be found in the March 4, 2002 time entry.

23.     Other examples of fruitless yet time consuming discovery positions include refusing to agree to a routine confidentiality agreement for a protective order covering Experian's sensitive documents (January 29, 2002 email, attached as Exhibit 14), filing a motion to compel responses to interrogatories when no interrogatories were served, moving to reconsider the Court's rulings on a motion to compel, and filing motions without requesting pre-motion conferences as required by the local rules.

24.     In sum, despite the enormous amount of time spent by Mr. Zelotes during discovery, only 4 depositions[1] took place during my representation of Experian. The documents exchanged by the parties amounted to little more than a file folder. Mr. Zelotes' obstruction, and not any alleged complexity to the case, was the reason for the time spent on the file.

---

[1] I am informed that a fifth deposition took place on the eve of trial.

## UNPROFESSIONAL CONDUCT

25.     Mr. Zelotes resorted to insulting and abusive language, with the goal of scoring debating points rather than advancing his clients interests. Again, there are numerous examples of Mr. Zelotes' conduct.

26.     In January 2002, Mr. Zelotes threatened a Rule 11 motion for sanctions against Experian. The reason for sanctions, according to Mr. Zelotes, was that Experian included affirmative defenses along with its answer to the complaint. January 22, 2002 Letter, attached as Exhibit 15.

27.     The motion for sanctions speaks for itself. January 22, 2002 Motion For Rule 11 Sanctions Against Jones, Day, Reavis & Pogue, attached as Exhibit 16.

28.     The motion for sanctions was served but not filed, and for reasons unknown, it was withdrawn. February 15, 2002 email, attached as Exhibit 17. According to his bills, Mr. Zelotes spent over 2 and one half hours drafting this motion. *See* Time Sheets submitted in support of Plaintiff's Motion For Attorneys Fees at January 21, 2002.

29.     Mr. Zelotes also wrote to me stating "[a]llow me the privilege of educating you with respect to the rules of civil procedure, as your understanding of the same appears deficient." January 31, 2002 letter, attached as Exhibit 18.

30.     Other examples of unprofessional conduct include threatening an appeal of the Court's ruling because his "civil rights have been violated" (June 20, 2002 email, attached as Exhibit 19), moving to compel a non-party (the Social Security Administration) to comply with discovery that had never been served upon it, and threatening to "bury" and "destroy" me after a deposition.

31. In sum, Mr. Zelotes' work on this case consisted in significant part of insults, threats, and boasts, not legitimate legal work for which he is entitled to be compensated.

George Kostolampros, Esq.

Sworn to before me this
20th day of May, 2004

Notary Public

PATRICK G BRODERICK
NOTARY PUBLIC, State of New York
No. 02BR6029287
Qualified in New York County
Commission Expires August 9, 2005