## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

_____
)
**LEWIS C. BROWN**                             )
)
                **Plaintiff**            )
**vs.**                                        )    **Case No. 3:01CV1967 (RNC)**
)
**EXPERIAN INFORMATION SOLUTIONS INC.**        )
)
            Defendant            )
_____  )   June 9, 2004


## REPLY MEMORANDUM IN SUPPORT OF

## MOTION FOR ATTORNEY FEES AND EXPENSE


Mud-slinging … hypocrisy … material omissions … and now … the *rest* of the story.


**A.     SETTLEMENT NEGOTIATIONS: THE POT CALLING THE KETTLE BLACK**

     Experian claims it was *plaintiff's* counsel who unreasonably refused to settle when, in

fact, just the opposite occurred.  Candor toward the tribunal (it appears) is of little consequence.

     At the outset of this action, it was *plaintiff's* counsel who initiated settlement

negotiations.

     In response to such prodding (in January 2002), Experian offered (an insulting)

$8,000.00, *inclusive of fees and costs*.  *See*: Reply Exhibit D

     On February 1, 2002, *the plaintiff* (after opening high at $150,000.00) invited an offer of

$68,000.00 (*inclusive*) (well below Experian's trial offer).  *See*: Reply Exhibits A & D

The defendant replied with a paltry $10,000.00 (*inclusive*) – and held firm.  Experian held firm – just shy of *two years* (November 4, 2003).  *See*: Reply Exhibits B & D

Let that sink in for a moment … plaintiff put *$68,000.00* on the table (inclusive) … and for nearly *two years* Experian held firm at *$10,000.00* (inclusive).

*Plaintiff's* counsel forced this litigation?

Please.

It was *Experian* who twice (*over plaintiff's protest*) adjourned the court's preliminary settlement conferences [of May 24,2002 and June 5, 2002].

> "I conferred with plaintiff's counsel and plaintiff's counsel is willing to go forth
> with the settlement conference.  Defendant, however, feels that a settlement
> conference at this time is inappropriate and will likely be a waste of the Court's
> and the party's resources at this time." – Jones Day   *See*: Reply Exhibit C

Did defense counsel share *any of this* with his honor?  It did not.  (So much for candor) Experian held firm at $10,000.00.

It was not until *after* the plaintiff *completely sustained* on summary judgment (to include a prima facie showing of willful misconduct) that Experian incrementally budged.  Until such time, Experian gleefully and tauntingly ridiculed plaintiff's counsel and his client's case.

On November 4, 2003 (two years after commencement and months shy of trial), Experian offered $50,000.00 (*inclusive*).  At such time, on information and belief, *Experian's fees alone* were $60,000.00.  Experian's offer was rightfully rejected.

Experian immediately thereafter requested a settlement conference.  The plaintiff (admittedly) objected, preferring not to bias the court on the eve of trial.  Experian's highest offer

at conference was $55,000.00.  Experian's highest pre-trail offer, $60,000.00, followed in December.

*Plaintiff's* counsel forced this litigation?

Hardly.

Experian *never once* made an offer the plaintiff reasonably feared might not be exceeded in the absence of punitive damages (i.e. worst case scenario).  Had Experian *genuinely* sought to avoid trial, it would have made such an offer, *notwithstanding* the plaintiff's fence-swing posturing.  Experian cannot now take credit for offers never extended.  Experian low-balled its offers, convinced plaintiff counsel's ("junior associate") knees would buckle on the courthouse steps.  Experian gambled on counsel's trial resolve … and lost.

Had Experian made a reasonable offer would plaintiff have abandoned his posturing?  It is a question for which this court will never know an answer because such an opportunity was never presented.  Experian must lie in the bed it made.

The defendant, choose to aggressively litigate a matter that could have been resolved at its inception for a cumulative sum ($68,000.00) *well below* its present liability ($50,000.00 plus fees and costs), the cost of defending (est. $100,000.00+), or its potential liability had the court sustained a finding of willfulness (a legitimate consideration, after a sustained prima facie demonstration of willfulness).   Instead, Experian actively refused court mediation and held firm at $10,000.00 for nearly two years.  Experian's subsequent 11th (and 13th)-hour offers did not reasonably account for the plaintiff's fees and were rightfully refused.  The defendant must now bear the consequences of its' own decision and aggressive tactic.  See, Fleet Inv. Co. v. Rogers, 620 F.2d 792 (10th Cir. 1980); Postow v. Oriental Bldg. Ass'n, 445 F.Supp 781 (D.D.C 1978). As the United States Supreme Court has said:

… [the defendant] could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner …  The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response. See, City of Riverside, supra, 477 U.S. at 580 n. 11 (citations omitted).

All of this, Experian conveniently withheld from his honor in an effort to demonize the undersigned.  A *very* black pot disparages the kettle.

And *now* you know … the *rest* of the story.


B.    **CASE HISTORY**


Experian goes to some length to disparage the efforts of plaintiff's counsel, to trivialize his success, and to portray much of what has come before as both meaningless and unintended.  Far be this from truth, a concise summary of this action, its subparts, and their significance follows.


I.    **PREFILING EVENTS**

On October 6, 1999, Fleet Credit Card Services L.P. (Fleet) mailed a letter to the plaintiff, Lewis C. Brown, informing him that his line of credit was being reduced from $9,000 to $500.  The Fleet letter stated that its decision was based, in whole or in part, upon serious derogatory credit and public record information appearing in a credit bureau report it received from the defendant, Experian Information Solutions Inc.  The Fleet letter informed the plaintiff that he had a right to a free copy of his credit report from Experian, providing Experian's mailing address and telephone number.

On October 15, 1999, the plaintiff dialed the Experian telephone number listed on the Fleet letter seeking to secure a copy of his credit report. Experian's automated credit report ordering system told the plaintiff that it could not process his request over the telephone and that the plaintiff would need to write. On October 15, 1999, the plaintiff wrote a letter to Experian at the address provided in the Fleet letter requesting a copy of his credit report, attaching a copy of the Fleet letter. In so doing, the plaintiff provided his first name, middle initial, last name, billing address, and signature.

On October 20, 1999, Experian responded with a form letter informing the plaintiff that it was unable to access his report using the information he had provided. Experian told the plaintiff it would require the following information in order to process his request: full name, including middle initial,, current delivery address and two proofs of address (such as copies of a utility bill), social security number, date of birth, complete addresses for the last five years and spouse's last name (if applicable). Experian asked that the plaintiff to provide it with the aforementioned information and to attach the October 20, 1999 correspondence when responding.

On November 3, 1999, the plaintiff submitted his renewed request for his credit bureau report, by certified mail, providing Experian with all of the personal information requested, attaching a copy of Experian's October 20, 1999 letter and two utility bills evidencing the plaintiff's same use of address since 1990 to current. The plaintiff's letter heading referenced "disputed derogatory data" and "second request."

On November 12, 1999, Experian responded to the plaintiff's November request, with a form letter, claiming Experian was unable to locate credit information about him using the information he given. Experian explained its professed inability in the following manner:

"Either we did not have enough information to access your report, or you do not have an established credit history."  At trial, the evidence demonstrated that Experian (in fact) had enough information to access his report and that the plaintiff had an established credit history.

By way of the November 12, 1999 letter, Experian offered to recheck its records if the plaintiff resubmitted the same identifying information in writing.

On December 10, 1999, the plaintiff responded to Experian's November form letter, resubmitting that same information and attachments previously furnished.  The plaintiff concurrently appended a cover letter.  The cover letter asked Experian to identify any specific item of identifying information it might need to determine if he was in its database in the event it was again unable to access his report.  The cover letter also referenced the derogatory letter received from Fleet.  The plaintiff's cover letter heading referenced "disputed derogatory data" and "third request."

On December 16, 1999, Experian responded to the plaintiff's November request, with a form letter, claiming Experian was unable to locate credit information about him using the information he given.  Experian explained its professed inability in the following manner: "Either we did not have enough information to access your report, or you do not have an established credit history."  The December 16, 1999 letter was identical in substance to the November 12, 1999 letter.

By way of the December 16, 1999 letter, Experian offered to recheck its records if the plaintiff resubmitted the same identifying information in writing.

At trial, Experian's expert witness testified that the aforesaid form letter would have repeated indefinitely unless and until the defendant contacted Experian by telephone and asked

to speak to a mixed file specialist.  The form letter, however, conditions a recheck of its records upon a subsequent request in writing.

At no time prior to trial did Experian inform the plaintiff that his credit information had been improperly merged with that of one or more other persons with the same or similar name.

Unable to secure a copy of his Experian credit report, the plaintiff engaged in a two year writing campaign with the Federal Trade Commission (FTC), Office of the Comptroller of the Currency (OCC), and Fleet.  The plaintiff's correspondence made frequent reference to his inability to secure or review his Experian credit file, concerns over the continued dissemination of derogatory credit information, and speculation that Fleet's reference to Experian was mere subterfuge for age discrimination.  On September 20, 1999, the OCC, having since concluded its investigation of Fleet, informed the plaintiff that it would not acknowledge future correspondence and suggested that he consult an attorney.

On October 15, 2001, the plaintiff retained undersigned counsel on a contingency fee arrangement, who subsequently commenced this action against Experian.

III.    **DEPOSITIONS**

On July 2, 2002, parties' counsel traveled to Hartford for Experian's deposition of the plaintiff.  On August 9, 2002 the plaintiff took Experian's 30b6 deposition by teleconference (Kimberly Hughes: Designee).  On August 29, 2002, by teleconference, the plaintiff deposed Experian's second 30b6 designee and expert witness, David Browne.

On August 27, 2002, parties counsel traveled to Philadelphia for the plaintiff's 30b6 deposition of Fleet (Scott Smaniotto).  This deposition would not have been necessary had Experian merely stipulated to the authenticity of the October 6, 1999 letter from Fleet and the

truth of the matters therein asserted (that Fleet reduced the plaintiff's credit limit based, in whole or in part, upon a derogatory credit report from Experian). Experian steadfastly refused plaintiff's reasonable invitations to so stipulate, hoping it might later exploit a hearsay objection to undermine the plaintiff's sustaining a prima facie case. Experian did not abandon this effort until an admonishment from the bench at trial.

On March 26, 2004, parties' counsel traveled to Hartford for the defendant's deposition of Mary Woehrle. Mary's deposition has a curious background. First, plaintiff moved to preserve Mary's deposition testimony for use at trial in lieu of live testimony. This court granted the plaintiff such leave over Experian's objection. In the meantime, the defendant filed a JTMR motion in limine seeking to preclude Mary's trial testimony. When a proximate date certain for trial was subsequently set in 2004, and counsel having verified Mary's availability at trial, plaintiff's counsel opined it to his client's advantage for forego the deposition (insofar as the defendant neglected to take her deposition during discovery and could not reasonably anticipate what she would say at trial). When Experian realized its unfortunate predicament, Experian noticed her deposition. Plaintiff's moved to quash the deposition as untimely and beyond the scope of leave granted the plaintiff. In the interests of facilitating a resolution of a pending motion in limine to exclude Mary's trial testimony, the court afforded Experian leave to depose her. Upon the deposition's conclusion, and upon stipulation that her trial testimony not exceed the scope of her deposition, Experian withdrew its motion in limine.

As evidenced by his time sheets, plaintiff's counsel spent substantial time preparing his friendly witnesses for deposition, scrutinizing documents produced in discovery, and formulating strategies to mask his questions so as to elicit key admissions without detection (or anticipation) by hostile deponents or opposing counsel.

**IV.    EARLY BATTLES OVER WRITTEN DISCOVERY DEMANDS**

In the first months of 2002, the parties exchanged written discovery demands.  The plaintiff indulged the overwhelming majority of Experian's requests absent objection, whereas Experian objected to all but few of the plaintiff's requests in boilerplate fashion.

Experian's boilerplate reply and persisting refusal following conference necessitated motion practice to compel.  The parties subsequently traveled to Hartford, whereby the court received oral argument.   On April 24, 2002, Judge Martinez issued her endorsement ruling (Doc. 40), compelling Experian's compliance (in whole or in part) with seven discovery requests.  Three discovery requests were denied as moot [admissions against interest volunteered in resisting] and as intruding upon third-party privacy.  Three other discovery requests were denied as premature.

**V.    PROTECTIVE ORDERS**

**i. Videotaped Depositions**

The plaintiff noticed Mary Woehrle's deposition at the inception of this action.  In an effort to mitigate his client's cost and conserve limited litigation resource, the plaintiff signaled his intent to record and preserve the deposition testimony by videotape with a notary public presiding.  Experian insisted that the plaintiff pay for a stenographer (a demand having no basis under Rule 26).

Rather than avoid needless motion practice by providing its own stenographer (for a deposition not reasonably expected to last in excess of 30 minutes), Experian moved for a protective order (to which the plaintiff was forced to respond).  The plaintiff resisted with good

faith argument supported by relevant case law, diverse theories of statutory construction, and the advisory notes speaking to applicable rules of procedure.  In this district, ours was a question of first impression.  The court refused Experian's motion to the extent it insisted upon the plaintiff subsidizing a stenographer, but granted the motion to the extent it sought to condition use of the video medium upon a (costly) third-party videographer (defeating the medium's intended aim).  The court appears to have based its decision, not upon a rejection of merits, but rather upon facts specific to this case (that the plaintiff's financial status as a retired patent attorney did not suggest a perceived requisite hardship).  The defendant paid for her subsequent deposition.

### ii.    Confidentiality

The defendant initially conditioned production of its documents upon the plaintiff's stipulating to confer unfettered right upon Experian to designate any and all of its documents confidential.  In accord with clear local case law on point (*Ahern v. Trans Union*), the plaintiff refused, insisting that Experian first articulate why each document to be designated confidential is necessary to safeguard a bona-fide trade secret of avoid a material harm.  The defendant offered nothing more than broad, sweeping generalizations – the same broad sweeping generalization rejected as insufficient in *Ahern*.

The plaintiff was motivated to resist for three reasons: 1) the plaintiff was reasonably concerned that the defendant would designate as confidential materials that were not in fact confidential in an effort to disadvantage the plaintiff by hindering or precluding his counsel from conferring with other consumer counsel more experienced in FCRA litigation; 2) the plaintiff was (appropriately) unwilling to curtail his constitutional right to free speech unless, and only the extent that, such curtailment was reasonably necessary to protect the defendant from harm – no such demonstration had been made; 3) liberal communication amongst the consumer bar is

necessary to compete evenly against counsel who regularly defend FCRA cases; and 4) the plaintiff was reasonably mindful of the public's interest in fair access to the occasions of our judiciary.

At oral argument, Judge Martinez agreed that Experian had failed to demonstrate why confidentiality was required and denied its motion. Upon a subsequent motion for reconsideration, Experian (for the first time) offered an affidavit articulating its purported basis for confidentiality. Judge Martinez thereafter ordered the parties to agree to terms.
The plaintiff offered to stipulate to a (palatable) confidentiality stipulation drafted by another national credit reporting agency (Trans Union). Experian (unreasonably) refused, demanding unfettered license. Upon subsequent judicial intervention (necessitated by Experian's refusal to accept the agreement drafted Trans Union), plaintiff reluctantly agreed to Experian's proposal in the interests of advancing discovery.

This motion was well, reasonably and appropriately fought.


**VI.    OTHER ACTIVITY PRE-DATING SUMMARY JUDGMENT**

   **i. Plaintiff's Rule 11 Motion**

On January 22, 2002, the plaintiff (seeking to limit the scope of discoverable issues, deter chicanery and avoid waste) served a Rule 11 motion, demanding that Experian aver only such affirmative defenses as might reasonably be averred in good faith. Experian's answer recites a boilerplate of indefensible affirmative defenses (e.g. res judicata, qualified privilege, immunity, indemnification).

On January 31, 2004, Experian withdrew "constitutionality of punitive damages" and its "reserved right to assert additional defenses" (kitchen sink) defense. Upon further consideration

(of tactic), the plaintiff refrained from filing (in the event, on future date, better opportunity presented itself, to discredit Experian's integrity, illustrating its knowing and persisting bad-faith assertion of "unclean hands" and [the queen bee] -- "res judicata").

### ii. Other Activity

In March 2002, the plaintiff diligently (but unsuccessfully) endeavored to identify and locate the persons whose information appeared on his credit report (the "other" Browns). The plaintiff aimed to discern if these other persons experienced similar problems reviewing their reports and more specifically, whether Experian had actual notice of the mixed file problem before the events giving rise to this action (probative of notice, recklessness and lack of mistake). Citing privacy concerns, the court declined plaintiff's request to compel Experian's disclosing such information.

From time to time, the parties frequently conferred for purpose of outlining, assembling and updating their joint conference and periodic status reports.   The parties were further required to furnish the court with (ex-parte) settlement memorandums in 2002 (and again in 2003).

Written and oral communication between parties' counsel (at all times during this litigation) has been extensive.

### VII.   <u>SUMMARY JUDGMENT</u>

In 2002, Experian moved for a summary judgment on all counts.   Experian's motion served to delay the trial date (for one year) and compelled the plaintiff to extensively research, brief and evidence a plethora of issues.  More specifically, Experian's motion necessitated a prima facie showing of 1) negligent noncompliance with the FCRA [for each theory of liability

asserted]; 2) willful noncompliance with the FCRA violations [for each theory asserted]; 3) unfair and deceptive acts and practices; 4) actionable mental distress; 5) ascertainable loss; 6) mitigation; and 6) to rebut (what the plaintiff properly identified as) misstatement of applicable law.

On May 30, 2003, the parties appeared at Hartford for argument.

On September 12, 2003, Judge Chatingy adopted Judge Martinez's recommended ruling in its entirety. *The plaintiff prevailed on every issue asserted or briefed and dually on all standards of scienter.*[1]

## VIII.  JOINT TRIAL MEMORANDUM REPORT TO PRE-TRIAL CONFERENCE

Substantial efforts (on both sides) were expended preparing the joint trial memorandum report. The critical importance of appropriately attending to the substance of this key document (proposed jury instructions, motions in limine, objections to the foregoing, issues of voir dire, stipulated fact, draft verdict forms, identification of evidence, objections thereto, etc.) is evident.

Experian moved to continue to trial date from February to April. The plaintiff objected, reasonably concerned about 1) the plaintiff's age; 2) the health and the trial availability of a key damages witness (Mary Woehrle); 3) the number of continuances previously secured (fearing a tactical cycle of endless delay); and 4) believing delay mere subterfuge for having failed to timely and adequately prepare a defense.

---

[1] *See*: Doc. # 78, Recommended Ruling on Defendant's Motion for Summary Judgment; *Etcetera:* In March 2002, the plaintiff also moved for summary judgment (in an effort to induce an early settlement). This motion was summarily denied on procedural grounds. Experian held firm at $10,000.00. Having failed to achieve the effect desired, the plaintiff proceeded with discovery.

At the final pretrial conference, the court continued trial to April, but in so doing, communicated a resolute unwillingness to accommodate further delay.  The court also denied two of Experian's three JTMR motions in limine (the third was subsequently withdrawn: *infra*).  These motions (if successful) might have precluded the plaintiff from sustaining a prima facie case or otherwise substantially reduced his award.  The plaintiff requested, and the court granted, leave to submit memoranda resisting the plaintiff's objections to his proffered evidence.

## IX.    POST PRE-TRIAL CONFERENCE MOTION PRACTICE AND ACTIVITY

After the pretrial conference, Mr. Zelotes extensively resisted (briefed) Experian's evidentiary objections.  Mr. Zelotes had diligently prepared his proof charts and was prudently zealous to assure that he could evidence (in more than one way) each element of every claim, and that he knew how each item of evidence was coming into evidence (over objection).  While clerking, Mr. Zelotes had witnessed far too many cases defeated on account of an attorney's failing to prepare thorough proof charts or hinging their prima facie case on a single piece of evidence (the unanticipated preclusion of which was inevitably fatal).  Mr. Zelotes ultimately overcame more than 30 evidentiary objections, surrendering but a single superfluous item.

Upon late verifying that Experian would not voluntarily make its 30b6 witnesses available at trial (mindful of his proof charts), the plaintiff immediately filed a series of motions in limine calculated to compel Experian to timely respond to deposition excerpts hastily assembled by the plaintiff to sustain a prima facie case.  Upon late verifying that Experian persisted in refusing to stipulate to Fleet's unavailability at trial, the plaintiff also moved to compel Experian to object or accede to the plaintiff's designated Fleet deposition excerpts.  Immediately after filing, Experian conferred at length with Mr. Zelotes and the appropriate

designations were agreed.  The defendant, however, continued in its insistence that the plaintiff

somehow compel Fleet's trial attendance notwithstanding their station well outside the reach of a

subpoena (Pennsylvania).[2]  To avoid possible surprise argument at trial preventing his

introduction of the Fleet testimony (by forecasted line of reason that plaintiff did not sustain a

burden of demonstrating he had exhausted all alternative recourse), the plaintiff served Fleet (and

Experian) by way of their designated statutory agents for service.  Neither parties' counsel or

Fleet's counsel were certain of outcome, but memoranda nonetheless filed in prudent caution.

General trial, exhibit and witness preparation concurrently ensued.


## X.    TRIAL TO PRESENT

On April 16, 2004, a jury was selected.  A three-day trial followed.

The plaintiff's testified at length about the events giving rise to this action and his

resulting mental distress.  The jury further heard evidence from a very close friend, Mary

Woehrle, who described how the preceding events adversely affected the plaintiff's eating,

sleeping, moods, conversation and demeanor.  Thereafter, deposition testimony was read into

evidence.  The plaintiff's case in chief proceeded in a well-organized fashion, evoked all

anticipated requisite testimony, and his witnesses held up nicely on cross-examination (the

byproduct of careful pre-trial preparation).  Opening argument was clear, concise and effective

(closing argument, somewhat less so).

_____

[2] The plaintiff was incredulous of this senseless motion practice, necessitated by Experian's inconsistent demand that the plaintiff serve Fleet (a corporate entity stationed in excess of 100 miles) while concurrently arguing that that the plaintiff could not similarly subpoena Experian (stationed in New York and within 100 miles) because it was a "corporate entity."

In cross-examining adverse witnesses, Mr. Zelotes appropriately controlled his adverse witnesses' answers, demonstrated a command of his file, impeached in staccato method, and rested without incident.

On April 19, 2004, the jury delivered a plaintiff's verdict pursuant to each cause of action asserted (the FCRA and CUTPA). As relates to the FCRA, the jury sustained the plaintiff's principal theory of liability, predicated upon Experian's failure to disclose the contents of the plaintiff's credit file upon proper request, and concurrently declined the plaintiff's ancillary theory of liability: that Experian failed to follow reasonable procedures in publishing the derogatory Fleet report. The jury, having determined the aforesaid acts negligent (but not willful), awarded compensatory damages in the amount of fifty thousand dollars ($50,00.00).

Following trial, Mr. Zelotes conferred with Mr. McLoon and (immediately thereafter) his client. Motion practice and party negotiations have since ensued.


## C.    CONCLUSION

When this court considers: 1) Experian's ominous threats, 2) the extraordinarily high caliber of opposing counsel, 3) Mr. Zelotes' contingent fee arrangement; 4) the complexities of discovery, 5) Experian's aggressive defense tactics [coupled with a history of paltry offers of settlement] 6) the unique body of law litigated (FCRA); 7) the real prospect of punitive damages (evidenced by a prima facie showing of willfulness sustained on summary judgment), 8) the excellent benefit conferred upon the plaintiff [$50,000.00] and 9) the equally important vindication of important national interests [inuring to the public benefit] … Experian's assertion that Mr. Zelotes somehow "over-lawyered" his case … fails to persuade. Mr. Zelotes did what he had to win, and did so, notwithstanding *substantial* handicap.

Plaintiff's Counsel has vigorously advanced the interests of the plaintiff for two-and-one-half years.  Because of the success achieved the plaintiffs are entitled to an award of reasonable attorney's fees and costs.  Thus, the plaintiffs respectively ask this Court to award the full award previously requested, plus such additional sum (for interim services) as this court deems just and appropriate.

Respectfully Submitted,

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC //* Shaw's Cove 5, Suite 202 // New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001 Tel: (860) 442-2265 // Fax: (860) 439-0295

# EXHIBIT A

## JONES, DAY, REAVIS & POGUE

599 LEXINGTON AVENUE

NEW YORK, NEW YORK 10022-6070

TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

WRITER'S DIRECT NUMBER:

(212) 326-8375
gkostolampros@jonesday.com

003194
026123-050268

February 4, 2002

VIA U.S. MAIL

Zenas Zelotes, Esq.
753 Buddington Road
Groton, CT 06340

> Re:   *Brown v. Experian*,
> Case No. 301-CV-1967 (D. Conn.) (RNC)

Dear Zenas:

Per your request in your e-mail message this afternoon, on Friday, February 1, 2002, we discussed settlement in the above-referenced matter. We terminated those discussions when you stated that you and your client would not accept our offer of $10,000. Additionally, you stated that your client would consider an offer of $68,000.

Please contact me if you have any questions or comments.

Sincerely,

George Kostolampros

ATLANTA • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • GENEVA • HONG KONG • IRVINE • LONDON • LOS ANGELES
NEW DELHI (AN ASSOCIATE FIRM) • NEW YORK • PARIS • PITTSBURGH • RIYADH • SHANGHAI • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT B

# JONES DAY

222 EAST 41ST STREET

NEW YORK, NEW YORK 10017-8702

TELEPHONE: 212-326-3939 • FACSIMILE 212-755-7306

WRITER'S DIRECT NUMBER
(212) 326-8375
gkostolampros@jonesday.com

003194
026123-059278                           November 4, 2003

## VIA FACSIMILE AND FEDERAL EXPRESS

Zenas Zelotes, Esq.
Consumer Law Office
753 Buddington Road
Groton, CT 06340

> Re:    *Brown v. Experian,*
> Case No. 3:01-CV-1967 (D. Conn.) (RNC)

Dear Zenas:

In the interest of amicably resolving this matter in order to save the parties further costs in this litigation, Experian hereby offers plaintiff $50,000.00 (Fifty Thousand Dollars and No Cents) to settle this action.

This letter is submitted pursuant to Federal Rule of Evidence 408 and is to be considered for settlement purposes only. This letter does not constitute an admission, either express or implied, of any fact or position in this litigation or otherwise.

Sincerely,

George Kostolampros/so

George Kostolampros

NYI-2095532v1

ATLANTA · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON · IRVINE · LONDON · LOS ANGELES · MADRID · MENLO PARK
MILAN · MUMBAI* · MUNICH · NEW DELHI* · NEW YORK · PARIS · PITTSBURGH · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON
*ASSOCIATE FIRM

# EXHIBIT C

# JONES, DAY, REAVIS & POGUE

222 EAST 41ST STREET

NEW YORK, NEW YORK 10017-6702

TELEPHONE: 212-326-3939 · FACSIMILE: 212-755-7306

WRITER'S DIRECT NUMBER:
(212) 326-8375
ckostolampros@jonesday.com

003194
026123-050268

May 24, 2002

<u>VIA FACSIMILE</u>

The Honorable Donna F. Martinez
United States Magistrate Judge
United States District Court
District of Connecticut
450 Main Street
Hartford, Connecticut 06103

Re:    <u>Brown v. Experian</u>, 301-CV-1967 (RNC)

Dear Judge Martinez:

We represent defendant Experian Information Solutions, Inc. ("Experian") in the above-referenced matter. As instructed by the Court's clerk, I have spoken with plaintiff's attorney regarding the upcoming June 5, 2002 settlement conference. Defendant would like to request an adjournment of that date because of the delays that have occurred in discovery, which include several discovery motions and the fact that no parties have been deposed at this time. I conferred with plaintiff's counsel and plaintiff's counsel is willing to go forth with the settlement conference. Defendant, however, feels that a settlement conference at this time is inappropriate and will likely be a waste of the Court's and the party's resources at this time. We would like to take the deposition of the plaintiff and have the Court decide on the plaintiff's motion to compel its confidentiality stipulation before we attend a settlement conference. Additionally, plaintiff has requested a pre-filing conference in order to file his summary judgment. We also intend to

NY-1216102v1

ATLANTA · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON · IRVINE · LONDON · LOS ANGELES · MADRID
MENLO PARK · MILAN · MUMBAI* · NEW DELHI* · NEW YORK · PARIS · PITTSBURGH · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON
*ASSOCIATE FIRM

JONES, DAY, REAVIS & POGUE

The Honorable Donna F. Martinez
May 24, 2002
Page 2

file a summary judgment motion in this action after we depose the plaintiff. Plaintiff has also
moved to extend discovery deadlines in this action, thus we would request that the Court also
adjourn the settlement conference until these issues are resolved.

Respectfully Submitted,

George Kostolampros

cc:    Zenas Zelotes, Esq. (via Facsimile)

NY-1216102v1

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

———————————————————————  )
                                                        )
**LEWIS C. BROWN**                         )
                                                        )
                            **Plaintiff**         )
    **vs.**                                           )        **Case No. 3:01CV1967 (RNC)**
                                                        )
**EXPERIAN INFORMATION SOLUTIONS INC.**    )
                                                        )
                            **Defendant**      )
———————————————————————  )        **June 9, 2004**


**DECLARATION OF ZENAS ZELOTES, ESQ.**


In accord with 28 U.S.C. § 1746, I, Zenas Zelotes, declare under penalty of perjury that the foregoing is true and correct:

1.   I am over eighteen years of age, and I believe in the obligations of an oath.

2.   Reply Exhibit A is a true and correct copy of a letter I received from Jones Day at the inception of this action, memorializing the parties' settlement then-existing postures, reflecting Experian's $10,000.00 offer and the plaintiff's $68,000.00 invitation to offer.

3.   Experian's opening offer was $8,000.00.

4.   Reply Exhibit B is a true and correct copy of a letter dated 11/04/03, received from Jones Day, reciting Experian's first offer of $50,000.00.

5.   Reply Exhibit C is a true and correct copy of a letter Jones Day sent to Judge

Martinez, discouraging an early settlement conference.

June 9, 2004

_____

ZENAS ZELOTES, Esq.
*Zenas Zelotes LLC* // Shaw's Cove 5, Suite 202 // New London CT 06320
Conn. Juris No. 419408 / Fed. Bar No.23001 / Tel: (860) 442-2265 / Fax: (860) 439-0295

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

Jones, Day, Reavis & Pogue
Attn: Daniel J. McLoon
555 West 5th Street, Suite 4600
Los Angeles CA 90012-1025      6/10/04

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Clerk of Court
450 Main Street
Hartford CT 06103            6/10/04

---

### CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the document(s) attached was served upon each addressee by USPS first class mail (or in-hand service) on the date(s) reflected.

6/10/2004

_____
ZENAS ZELOTES, ESQ.
*Zenas Zelotes LLC*
Shaw's Cove 5, Suite 202
New London CT 06320
Conn. Juris No. 419408 // Fed, Bar No. 23001
Tel: (860) 442-2265 // Fax: (860) 439-0295

---

*Zenas Zelotes* LLC
Shaw's Cove 5, Suite 202
Tel. (860) 442-2265 / Fax. (860) 439-0295

COMMERCIAL LITIGATION & PLANNING

United States District Court
Attn: Chambers (Chatigny J.)
450 Main Street
Hartford CT 06103            6/10/04